## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

**FILED**

J.N

APR 1 7 2009

Apr 17, 2009

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| GLORIA E. SWANSON and CHARLES M. ROUTEN, | ) ) ) | |
| Plaintiffs, | ) ) | Civil No. |
| v. | ) ) | |
| CITI, d/b/a CITIBANK, a member of CITIGROUP, ANDRE LANIER, Appraiser and PCI APPRAISAL SERVICES, | | 09cv2344 Judge Zagel Mag. Judge Mason |
| Defendants. | | |

## COMPLAINT

NOW COME, Gloria E. Swanson and Charles M. Routen, husband and wife, on their own behalf, as pro se plaintiffs, for their Complaint against Defendants CITI, d/b/a CITIBANK (hereinafter referred to as, "Citibank"), Andre Lanier, appraiser, (hereinafter referred to as "Lanier") and PCI Appraisal Services (hereinafter referred to as "PCI").

1.      This Court has federal subject matter jurisdiction pursuant to the diversity statute, 28 U.S.C. §1332.  Plaintiffs Gloria E. Swanson and Charles M. Routen (hereinafter referred to as "Plaintiffs" are residents of Cook County, Illinois.

2.      Defendant Citibank's CEO is located in New York, New York and Citibank's mortgage lending headquarters are located in O'Fallon, Missouri.  Citibank transacts business in Illinois among other places.

3.      Venue is proper in the Northern District of Illinois because Plaintiffs applied for an equity loan with Citibank in Chicago, Illinois and Plaintiffs are residents in this district.

## FACTS

4.      On or about February 4, 2009, Plaintiff Gloria E. Swanson (hereinafter referred to as "Swanson") heard an announcement on NBC-5 News, Chicago that Citibank was releasing a

statement to the effect that it was going to make a concerted effort to get more of the "bailout" money that it had accepted from the United States government into the hands of consumers in the form of equity loans, mortgages, credit cards and car loans. The TV news announcement was aired shortly after the Citigroup "Jet" fiasco where a Citibank executive used a corporate jet for personal use for his family.

5.     Plaintiff, Swanson, applied for an Equity loan with Citibank's branch at 11 S. LaSalle Street, Chicago, Illinois 60603. Upon approaching a Citibank loan representative, a B. Skertich, Plaintiff Swanson was honest with Citibank and told him that she had applied for and been turned down for an equity loan with Washington Mutual Bank (now JPMorgan Chase). However, that specific denial took Washington Mutual (another bailed out bank) over two (2) months to deny Plaintiffs' loan application. That issue is currently under investigation by JPMorgan Chase, Executive Resolution Group.

6.     Citibank personnel did not seem to know anything about the TV announcement that had aired earlier that day by Citigroup regarding making more loans available as a result of the government bailout money Citibank accepted. Mr. Skertich stated to Swanson that she would have to have her husband with her to make an application. Swanson did not accept that statement because any loan tied to their property or refinancings over the last 10 years had always had the applications started by Swanson in terms of simply picking up a loan application form or giving the bank personnel verbal information to input into a computerized application form. Plaintiff Routen, Swanson's husband, would sign forms later which were returned to the bank and Routen attended any actual closings in person with Swanson. At that point, Mr. Skertich offered to allow Swanson to speak with the branch manager of that location.

7.     Citibank's branch manager, Ms. June Cimino, (hereinafter referred to as "Cimino") literally told Swanson that while she was not trying to discourage her from making a loan application, Citibank's loan criteria was more stringent than JPMorgan Chase's. Although Cimino prefaced her statement with the fact that she was not trying to discourage Swanson from applying for a loan, that is exactly what she was doing. Cimino was literally telling Swanson that if Plaintiff had been turned down by JPMorgan Chase, there was no need for Plaintiff to apply at Citibank. Plaintiff's point was that Citibank had made a public announcement via the TV news regarding making an extra effort to get loans to consumers. This announcement by Citibank suggested that Citibank's effort was regardless of what other banks were or were not doing because it, Citibank, had taken government bailout money and was now going to get that money to consumers. Plaintiffs now know that these public announcements by Citibank were not sincere and were only an attempt to play down the bad publicity it was getting regarding its executives' wasteful personal use of company corporate jets. Citibank never had any intention of making loans available, especially not to the African American community.

8.     Refusing to be discouraged or turned away, Plaintiff Swanson told Cimino that she didn't even know Plaintiff's name, yet Cimino was trying to turn Plaintiff away from applying for a loan. Plaintiff had only given her name to Mr. Skertich before he called his manager over. Plaintiff told Cimino that she was not going to be literally verbally turned down for a loan before she could be allowed an application process. Turning Plaintiff down before knowing anything about Plaintiff other than the fact that Plaintiff is an African American smacks of discrimination and redlining.

9.     Mr. Skertich then gave Plaintiff an application to take home and fill out, to be signed by Swanson and her husband, Routen, with the instructions regarding bringing in copies

3

of Swanson's and Routen's driver's licenses, check stubs, tax bills, etc.

10.    Plaintiff returned to Citibank the next day with the required information, wherein Mr. B. Skertich input into the computer all of Plaintiffs' information for the loan application.

11.    Plaintiffs later received the attached form letter dated February 5, 2009 (Exhibit 1) stating, "*We are pleased to inform you that your Fixed Rate Home Equity Loan application has been conditionally approved for $50,000*" . . .pending review of required documents. Plaintiff faxed all requested documents to the Citibank fax number supplied on the conditional approval letter.

12.    Citibank arranged for an appraiser to come out to Plaintiffs' home to do an onsite appraisal. Citibank hired appraiser, Andre Lanier of PCI Appraisal Services who came to Plaintiffs' home on Saturday, February 7, 2009.

13.    On February 17, 2009, Swanson telephoned Citibank to ascertain the status of Plaintiffs' loan application. Plaintiff was then told that Plaintiffs' loan had been denied because the equity is not in Plaintiffs' home. When Swanson asked what the appraisal came in as, she was told $170,000.00 (Exhibit 2). The last appraisal on Plaintiffs' home was for $260,000 in 2003. Swanson has resided at 8920 S. Chappel Avenue, Chicago, Illinois for 21 years.

14.    Plaintiff Swanson wrote to the CEO of Citibank, Mr. Vkiram Pandit on February 17, 2009, expressing her disagreement with the Citibank appraisal of her property by Lanier and PCI. The only thing the citizens of these United States are getting from Citibank is a lot of phony press releases touting Citibank's intentions to distribute more of the bailout money to consumers when the reality is that Citibank is using games, untrue appraisals and trickery to keep from distributing loans in African American neighborhoods.

15.    Plaintiffs' loan denial was later confirmed in a letter from Citibank dated

February 14, 2009, which curiously was a Saturday. While Plaintiffs are a legal secretary and a Science teacher who have been on their respective jobs for 12 and 20 years, neither Plaintiffs' employment statuses nor their credit ratings were the reasons given by Citibank for reneging on their conditional approval of Plaintiffs' equity loan application. The sole reason given by Citibank for its denial of Plaintiffs' loan application was "insufficient equity relative to the value of the collateral" (Exhibit 3)

16.    Citibank's CEO had a liasion respond to Plaintiffs' February 17, 2009 letter. In that letter, Citibank's Executive Response Liaison, Lori A. Chenot (hereinafter referred to as "Chenot") stated that the only reason Plaintiffs received a "conditional approval" was because Plaintiff Swanson had stated that Plaintiffs' property was worth $270,000.00. The implication was that Plaintiffs had intentionally misstated the value of their property. (Exhibit 4) .

17.    Plaintiffs then wrote a letter to Chenot dated March 18, 2009 wherein Plaintiffs explain that they do not accept Citibank's and PCI's appraisal of their property at $170,000, while giving provable and defendable rationale for their premise that the property is worth much more than $170,000.00. (Exhibit 5) Plaintiffs also informed Citibank's Chenot that while Plaintiffs are not appraisers, even with the down turn of the housing market, Plaintiffs have legitimate reason to value their property at close to its last appraised value of $260,000.00. Plaintiffs also stated in their March 18, 2009 letter to Chenot that they had a problem with Citibank's implication that Plaintiffs "misled or fabricated" the stated value of their home. Again, Chenot's letters of March 2, 2009 and of March 25, 2009 (Exhibit 4) specifically states that:

"... you stated to Citibank that the value of your property was $270,000. Citibank did document your loan application with your personal assessment of the property value, which as a result, did not support Citibank's full appraisal inspection."

After Plaintiff Swanson expressed her chagrin as to Citibank's implied suggestion that

Plaintiffs had been misleading in their loan application regarding the value of their property, Chenot's March 25, 2009 letter apologized for any implication in Chenot's March 2, 2009 letter that Plaintiffs' statement regarding the value of their home was in any way intended to imply dishonesty on Plaintiffs' parts. However, this Court can determine for itself the meaning and implications of the language in Chenot's March 2, 2009 letter in making her point that Plaintiffs' loan was denied strictly due to Plaintiffs' statement (or implied misrepresentation) of the value of their property. Plaintiff's equity loan application with Citibank was for a loan request of $50,000. Plaintiffs currently owe approximately $121,000 on their first mortgage and $25,000 on an equity line of credit with another bank. Plaintiffs intended to pay off the $25,000 second mortgage out of the $50,000 equity loan it applied for with Citibank.

18.     Again, Plaintiffs are not appraisers. Plaintiffs' assessment of the value of their property was just that, "an assessment", substantiated by other properties in our neighborhood and by what our home had appraised for in 2003. A home sold on our block in August of 2008 for $325,000.00. Another home directly across the street from Plaintiffs' home which is only a two (2)-bedroom home (Plaintiffs' home is a three (3) bedroom home) is currently on the market for $260,000.00. While home values have tumbled in many areas, they have only taken 16% to 20% decreases, with some even less than that in certain areas. Allstate Insurance Company has insured Plaintiffs' home for the last 21 years. Allstate's most recent homeowners policy, through its own market analysis, insures Plaintiffs' home for $291,000 as of August 25, 2008.

19.     Citibank's Chenot wrote in her letter of March 25, 2009 that Citibank has checked with its legal department and that they continue to stand behind their appraisers' (Lanier and PCI) appraisal of Plaintiffs' home at $170,000.00. Therefore, Citibank continued to decline Plaintiffs' loan application, rescinding its "conditional approval".

6

## ARGUMENT

20.    Because Citibank's and PCI's appraisal of Plaintiffs' property is so far off the mark, Plaintiffs contend that Citibank, through its appraisers Lanier and PCI, has engaged in a systematic scheme of low-ball appraisals in order to appear to be legitimately giving consumers opportunities for loans in connection with the bailout money Citibank received from the government, while in actuality condoning and/or intentionally hiring appraisers that give under-valued appraisals so that Citibank can avoid giving loans in the Black community.

21.    Plaintiffs commissioned and paid for their own appraisal through Midwest Valuations, dated April 12, 2009.  The appraisal by Midwest Valuations, done two months after Lanier's appraisal, came in at an appraised value of $240,000.00 for Plaintiffs' property at 8920 S. Chappel Avenue, Chicago, Illinois.  (Exhibit 6)

22.    Plaintiffs contend that a swing of $70,000.00 in value between two appraisals, done only two months apart, signals that something is seriously wrong with Lanier's appraisal. Plaintiffs contend that the "wrong" is on the part of Citibank in its attempts to devalue property in African American neighborhoods as a means of holding onto the bailout money it is supposed to be distributing in loans to consumers.  Citibank is instead unfairly distributing the loans they decide to give out to consumers only in the areas they choose to distribute them in, i.e., redlining, discriminatory tactics.

23.    Citibank's scheme has to be exposed because it otherwise appeared that African American properties were not valued high enough to obtain equity loans or mortgages from banks that had promised distribution of loans in connection with the government bailout money's alleged trickle down to consumers.  While Citibank wants to look like it is legitimately offering the loans in Black communities by sending their insincere "conditional approval" letters, it

avoids making the loans and thus does not put the loans into the Black community. Citibank

ultimately snatches back the loan offer made in the "conditional approval letter", making it

appear that rescinding the loan was solely the fault of the loan applicant when applicant's

property, appraised by Citibank's handpicked appraiser, is severely low-balled and devalued via

an unreliable appraisal by Lanier and PCI.

24.     While appraisals or appraisers may be subjective to some extent, the State of

Illinois, Department of Financial and Professional Regulations, Certified Residential Real Estate

Appraiser licensing standards and guidelines would not allow for a legitimate appraisal

discrepancy of $70,000.  Plaintiffs complain that this kind of huge dollar value swing in

appraisals by two companies certified by the same State of Illinois regulators is extremely out of

range and that the "low side" appraisal is at the behest of Citibank.

<h2 style="text-align:center">CONCLUSION</h2>

25.     Citibank should be held accountable for its discriminatory lending practices which

it is perpetrating under the false premise and guise of "equity not being in the property".

Citibank has taken bailout money from the U.S. government, but has devised this scheme in

order to "appear" to be giving consumers access to the government bailout money.  In reality,

Citibank has no intention of granting many loans in African American communities.  True to

form with the arrogance and greed that Citibank executives displayed with their personal use of

corporate jets, along with other wasteful behavior after receiving bailout money, Citibank is now

engaging in false and misleading advertising regarding getting loans to consumers, along with

insincere conditional loan approvals.  Citibank then attempts to substantiate this unfair and

illegal scheme with unreliable appraisals.

WHEREFORE, Plaintiffs respectfully asks this court for the following relief:

(a)      damages in the amount of $50,000 for the fraud being perpetrated by Citibank, under the Truth in Lending Act, along with Lanier and PCI Appraisal Services resulting in injustice and unfairness to Plaintiffs regarding the value of their property.

(b)      punitive damages in the amount of $50,000 due to Citibank's intentional infliction of frustration and emotional distress on Plaintiffs while they fight to defend the value of their property against Citibank's scheme.  Citibank, through its collusion with Lanier and PSI, has sought to devalue Plaintiffs property simply to keep Plaintiffs and other African American consumers from gaining legitimate access to loans Citibank vowed to give out due to its acceptance of government bailout money.  This kind of property devaluation attempt by Citibank not only hurts Plaintiffs financially and personally, but it affects the security and standing of our entire African American community.

(c)      grant Plaintiffs reimbursement for the cost of the Appraisal that Plaintiffs had to pay for and obtain along with the cost of filing this lawsuit.

(d)      Such other relief as the Court deems just.

Respectfully submitted

Gloria E. Swanson, on behalf of
Gloria Swanson and Charles Routen
Plaintiffs, pro se,

Dated:  April 17, 2009

Gloria E. Swanson and Charles Routen,
Plaintiffs pro se
8920 S. Chappel Avenue
Chicago, IL  60617-2919
99500 pro se

# __EXHIBITS__

Citibank Conditional Approval Letter, dated February 5, 2009          Exhibit 1

Appraisal of Andre Lanier of PCI Appraisal Services for
 Property at 8920 S. Chappel Avenue, Chicago, IL 60617
 Dated February 9, 2009, Appraised at $170,000.00          Exhibit 2

Citibank Loan Denial letter, dated February 14, 2009          Exhibit 3

Citibank letter from Lori A. Chenot, Executive Response
 Liaison, dated March 2, 2009          Exhibit 4-1

Citibank letter from Lori A. Chenot, Executive Response
 Liaison, dated March 25, 2009          Exhibit 4-2

Plaintiffs Gloria E. Swanson and Charles Routen letter
 To Citibank's Lori Chenot, dated March 18, 2009          Exhibit 5

Appraisal of Eric M. Glenn of Midwest Valuations for
 Property at 8920 S. Chappel Avenue, Chicago, IL 60617
 Dated April 13, 2009, Appraised at $240,000.00          Exhibit 6

# EXHIBIT 1

begin



1900 TECHNOLOGY DRIVE MS-760
O'FALLON MO 63368

February 5, 2009

EXHIBIT
1

CHARLES M ROUTEN
GLORIA E SWANSON
8920 S. CHAPPEL AVE
CHICAGO IL 60617

**DEAR CHARLES M ROUTEN and GLORIA E SWANSON:**

Thank you for choosing Citibank for your credit needs. We are pleased to inform you that your Fixed Rate Home Equity Loan application has been conditionally approved for $50,000.00. Final approval is subject to review of required documents, property valuation, title report and other standard verifications. In order to complete our review, we need the following:

- Please sign and return the enclosed Borrower's Authorization to release information.
- WE WILL OBTAIN THE PAYOFF FROM YOUR MORTGAGE LENDER(S) PRIOR TO CLOSING.
- Current paystub from all employers (within 30 days) for: Borrower 1.
- Copy of all W-2s from last year, for Borrower 1.
- Current paystub from all employers (within 30 days) for: Borrower 2.
- Copy of all W-2s from last year, for Borrower 2.
- SEE NEXT PAGE FOR ADDITIONAL REQUIREMENTS
- HAS ANY NEW CREDIT BEEN ESTABLISHED AS A RESULT OF RECENT INQUIRY BY BANK OF
- AMERICA? IF YES, NEED BALANCE & PAYMENT AMOUNT. IF APPLICATION FOR HOME
- EQUITY WAS SUBMITTED, WE WILL NEED A COPY OF WITHDRAW LETTER.

To expedite our review, fax the above requested documents / information to us at 866-645-0301. Please write the reference number (provided below) on each page. If you do not have access to a fax machine, please return them in the enclosed postage paid envelope. You may also stop by a local Citibank Financial Center for assistance. Please respond immediately. If we do not hear from you within 10 days, your application will not receive any further consideration.

If you have any questions, please call us at (866) 247-5358, Monday through Friday, 7:30 AM - 7:00 PM and Saturday 8:00 AM - 3:00 PM CT✱

Once again, thank you for choosing Citibank for your credit needs. We look forward to hearing from you soon.

Sincerely,

Terry Johnson
Citibank, N.A.

Reference #109020405790000 (PCBR)
CFA Number: 4495381

See reverse side for important information.

To ensure quality service, incoming calls are randomly monitored. For TTY service, call (800) 945-0258.



# EXHIBIT 2

EXHIBIT
2



**LSI**

A FIDELITY PROCESSING SERVICES COMPANY
2550 N. Redhill Avenue
Attn: Accounting Department
Santa Ana, CA 92705
Phone: (800) 722-0300 · Fax: (866) 874-3595

## Invoice: 5766414 - 63902918

---

**Client Information**

**To:**        **CITIBANK / CBNA**
**Attention:**

              1000 Technology Dr
              O'Fallon, MO 63368
              (800) 456-4510

---

**Borrower Information**

| | | | |
|---|---|---|---|
| **Name:** | CHARLES M ROUTEN | **Loan No :** | 109020405790000 |
| **Property Address:** | | **Order ID :** | 5766414 |
| **Street :** | 8920 CHAPPEL AVE S | **Date of Completion :** | 02/10/2009 |
| | CHICAGO, IL 60617 | | |
| **County:** | Cook | | |

---

| Description | Charge |
|---|---|
| FNMA - 1004 Single Family Residential | $310.00 |

**Payment Received**

| | |
|---|---|
| **Please pay this amount:** | **$310.00** |

---

*Appraisal Invoice (AL040520)*

## Uniform Residential Appraisal Report
File No. 5766414_63902918

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | | | |
|---|---|---|---|
| Property Address 8920 S Chappel Ave | City Chicago | State IL | Zip Code 60617-2919 |
| Borrower Charles Routen & Gloria Swanson | Owner of Public Record Charles Routen & Gloria Swanson | | County Cook |

Legal Description See lenders title policy

| | | |
|---|---|---|
| Assessor's Parcel # 25-01-216-075-0000 | Tax Year 2007 | R.E. Taxes $ 907.35 |
| Neighborhood Name Calumet Heights | Map Reference 16974 | Census Tract 4804.00 |

Occupant [X] Owner [ ] Tenant [ ] Vacant    Special Assessments $ 0.00    [ ] PUD    HOA $ 0.00    [ ] per year [ ] per month
Property Rights Appraised [X] Fee Simple [ ] Leasehold [ ] Other (describe)
Assignment Type [ ] Purchase Transaction [ ] Refinance Transaction [X] Other (describe) Equity
Lender/Client CITIBANK/CBNA    Address 1000 Technology Dr, O'Fallon, MO 63368
Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? [X] Yes [ ] No
Report data source(s) used, offering price(s), and date(s). Multiple Listing Service of Northern Illinois

I [ ] did [X] did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.
Equity Transaction

Contract Price $ Refinance    Date of Contract    Is the property seller the owner of public record? [ ] Yes [ ] No    Data Source(s)
Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? [ ] Yes [ ] No
If Yes, report the total dollar amount and describe the items to be paid.  $

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|
| Location [X] Urban [ ] Suburban [ ] Rural | | | Property Values [ ] Increasing [ ] Stable [X] Declining | | | PRICE $(000) | AGE (yrs) | One-Unit | 90 % |
| Built-Up [X] Over 75% [ ] 25-75% [ ] Under 25% | | | Demand/Supply [ ] Shortage [ ] In Balance [X] Over Supply | | | 27 Low | 1 | 2-4 Unit | 5 % |
| Growth [ ] Rapid [X] Stable [ ] Slow | | | Marketing Time [ ] Under 3 mths [ ] 3-6 mths [X] Over 6 mths | | | 220 High | 99+ | Multi-Family | 3 % |
| | | | | | | 83 Pred. | 99+ | Commercial | 2 % |
| | | | | | | | | Other | % |

Neighborhood Boundaries The neighborhood is bounded on the North by 87th, on the East by Cottage, on the South by 95th, and on the West by Burly, approximately.
Neighborhood Description The neighborhood is primarily a residential area, composed of average homes with adequate maintenance and average appeal in the market. The neighborhood appears to have reasonable access to schools, places of worship, employment, shopping, public transportation, freeway access and local CBD, and supporting services. This neighborhood appears to have declining
Market Conditions (including support for the above conclusions) See addenda.

| | | | |
|---|---|---|---|
| Dimensions 40*160 | Area 6,400 Sq.Ft. | Shape Rectangular | View Residential |

Specific Zoning Classification RS-2    Zoning Description Residential
Zoning Compliance [X] Legal [ ] Legal Nonconforming (Grandfathered Use) [ ] No Zoning [ ] Illegal (describe)
Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes [ ] No    If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | | Water | [X] | | Street Asphalt | [X] | |
| Gas | [X] | | Sanitary Sewer | [X] | | Alley Asphalt | [X] | |

FEMA Special Flood Hazard Area [ ] Yes [X] No    FEMA Flood Zone X    FEMA Map # 17031C0655J    FEMA Map Data 8/19/2008
Are the utilities and off-site improvements typical for the market area? [X] Yes [ ] No    If No, describe.
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? [ ] Yes [X] No    If Yes, describe.

| GENERAL DESCRIPTION | FOUNDATION | EXTERIOR DESCRIPTION materials/condition | INTERIOR materials/condition |
|---|---|---|---|
| Units [X] One [ ] One with Accessory Unit | [ ] Concrete Slab [ ] Crawl Space | Foundation Walls Concrete/Average | Floors Vinyl,cpt/avg |
| # of Stories 1 | [X] Full Basement [ ] Partial Basement | Exterior Walls Brick/Average | Walls Sheetrock/Avg. |
| Type [X] Det. [ ] Att. [ ] S-Det./End Unit | Basement Area 1,125 sq. ft. | Roof Surface Asphalt Shgl/Avera | Trim/Finish Wood/Average |
| [X] Existing [ ] Proposed [ ] Under Const. | Basement Finish 100% | Gutters & Downspouts Aluminum/Average | Bath Floor Vinyl/Average |
| Design (Style) One story split | [X] Outside Entry/Exit [ ] Sump Pump | Window Type Singlehung/Averag | Bath Wainscot Tile/Average |
| Year Built 1961 | Evidence of [ ] Infestation | Storm Sash/Insulated YES/Yes | Car Storage [ ] None |
| Effective Age (Yrs) 6 | [ ] Dampness [ ] Settlement | Screens No | [ ] Driveway # of Cars |
| Attic [X] None | Heating [X] FWA [ ] HWBB [ ] Radiant | Amenities [ ] WoodStove(s) # | Driveway Surface |
| [ ] Drop Stair [ ] Stairs | [ ] Other  Fuel Gas | [X] Fireplace(s) # 1 [X] Fence | [ ] Garage # of Cars 1 |
| [ ] Floor [ ] Scuttle | Cooling [X] Central Air Conditioning | [X] Patio/Deck [ ] Porch | [ ] Carport # of Cars |
| [ ] Finished [ ] Heated | [ ] Individual [ ] Other | [ ] Pool [ ] Other | [X] Att. [ ] Det. [ ] Built-in |

Appliances [1] Refrigerator [ ] Range/Oven [1] Dishwasher [1] Disposal [1] Microwave [1] Washer/Dryer [ ] Other (describe)
Finished area above grade contains:    5 Rooms    3 Bedrooms    2 Bath(s)    1,585 Square Feet of Gross Living Area Above Grade
Additional features (special energy efficient items, etc.). Typical for area

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.). The property is in generally good condition and has been well maintained by the current owner. Condition is consistent with other properties in this age bracket.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? [ ] Yes [X] No    If Yes, describe.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? [X] Yes [ ] No    If No, describe.

## Uniform Residential Appraisal Report

File No. 5766414_63902918

There are **3** comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 190,000 to $ 200,000
There are **3** comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 170,000 to $ 210,000

| FEATURE | SUBJECT | COMPARABLE SALE NO. 1 | +(-)$ Adjustment | COMPARABLE SALE NO. 2 | +(-)$ Adjustment | COMPARABLE SALE NO. 3 | +(-)$ Adjustment |
|---|---|---|---|---|---|---|---|
| Address | 8920 S Chappel Ave<br>Chicago, IL 60617-2919 | 1924 E 92nd St<br>Chicago, IL 60617 | | 8947 S Cornell Ave<br>Chicago, IL 60617 | | 8822 S Oglesby Ave<br>Chicago, IL 60617 | |
| Proximity to Subject | | 0.37 miles SW | | 0.49 miles W | | 0.40 miles E | |
| Sale Price | $ Refinance | $ 210,000 | | $ 210,000 | | $ 170,000 | |
| Sale Price/Gross Liv. Area | $ sq. ft. | $ 150.97 sq. ft. | | $ 158.73 sq. ft. | | $ 147.57 sq. ft. | |
| Data Source(s) | | MLS# 06940664 62 DOM days | | MLS# 07036600 95 DOM days | | MLS# 07033496 12 DOM days | |
| Verification Source(s) | | MLSNI/county recorder | | MLSNI/county recorder | | MLSNI/county recorder | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment |
| Sale or Financing Concessions | | PNT | -12,600 | None | | PNT | -5,100 |
| Date of Sale/Time | | 10/03/2008 SD | -20,240 | 01/28/2009 SD | -5,280 | 11/13/2008 SD | -23,237 |
| Location | Urban | Urban | | Urban | | Urban | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 6,400 Sq. Ft. | 3630 Sq. Ft. | | 3480 Sq. Ft. | | 3750 Sq. Ft. | |
| View | Residential | Residential | | Residential | | Residential | |
| Design (Style) | One story split | level One story sp | | One story split | | One story split | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Actual Age | 48 | 50 | | 56 | | 55 | |
| Condition | Average | Average | | Average | | Average | |
| Above Grade Room Count | Total 5 Bdrms 3 Baths 2 | Total 5 Bdrms 3 Baths 1.5 | +500 | Total 5 Bdrms 3 Baths 1.5 | +500 | Total 5 Bdrms 3 Baths 1.5 | +500 |
| Gross Living Area | 1,585 sq. ft. | 1,391 sq. ft. | +2,910 | 1,323 sq. ft. | +3,930 | 1,152 sq. ft. | +6,495 |
| Basement & Finished Rooms Below Grade | Full finished REC | Full finished REC | | Full finished REC | | Full finished REC | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | GFAC | GFAC | | GFAC | | GFAC | |
| Energy Efficient Items | Typical | Typical | | Typical | | Typical | |
| Garage/Carport | 1-car garage | None | +2,500 | 2-car garage | -1,000 | 2-car garage | -1,000 |
| Porch/Patio/Deck | Patio | Patio | | Patio | | Patio | |
| Updated Kitchens/I | Average | Superior | -17,500 | Superior | -17,500 | Average | |
| Net Adjustment (Total) | | [ ]+ [X]- $ | 44,430 | [ ]+ [X]- $ | 19,350 | [ ]+ [X]- $ | 22,342 |
| Adjusted Sale Price of Comparables | | Net Adj. -21.2%<br>Gross Adj. 26.8% $ | 165,570 | Net Adj. -9.2%<br>Gross Adj. 13.4% $ | 190,650 | Net Adj. -13.1%<br>Gross Adj. 21.4% $ | 147,658 |

I [X] did [ ] did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research [ ] did [X] did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s) MLSNI of Northern Illinois and Cook County Records
My research [ ] did [X] did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s) MLSNI of Northern Illinois and Cook County Records
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE NO. 1 | COMPARABLE SALE NO. 2 | COMPARABLE SALE NO. 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | No other known sales | No other known sales | No other known sales | No other known sales |
| Price of Prior Sale/Transfer | Within prior 36 months | Within prior 12 months | Within prior 12 months | Within prior 12 months |
| Data Source(s) | MLSNI/country recorder | MLSNI/county recorder | MLSNI/county recorder | MLSNI/country recorder |
| Effective Date of Data Source(s) | 02/08/2009 | 02/08/2009 | 02/08/2009 | 02/08/2009 |

Analysis of prior sale or transfer history of the subject property and comparable sales   No other known sales than what is reported above.

Summary of Sales Comparison Approach.   See attached addenda.

Indicated Value by Sales Comparison Approach $   170,000
Indicated Value by: Sales Comparison Approach $ 170,000   Cost Approach (if developed) $   169,135   Income Approach (if developed) $
Market actions of buyers and sellers are best analyzed by the Sales Comparison Approach. That approach is given greatest weight in the reconciliation. The Cost Approach provides confirmation of value only. The Income Approach was not developed.

This appraisal is made [X] "as is.", [ ] subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, [ ] subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or [ ] subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair: This is not a rental neighborhood, and insufficient data is available for the Income Approach. This is a summary report of a limited appraisal as defined by SR 2-2(b), USPAP.
Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 170,000
as of 02/09/2009, which is the date of inspection and the effective date of this appraisal.

## Uniform Residential Appraisal Report

File No. 5766414_63902918

See General Text Addenda

### COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)  Allocation method and vacant land sales were used for estimating site value.

| | | | |
|---|---|---|---|
| ESTIMATED [X] REPRODUCTION OR [ ] REPLACEMENT COST NEW | OPINION OF SITE VALUE .................................................. = $ | | 10,000 |
| Source of cost data Buildingcost.net | Dwelling      1,585 Sq. Ft. @ $    90.00....... = $ | | 142,650 |
| Quality rating from cost service        Effective date of cost data 02/09/2009 | 1,125      Sq. Ft. @ $    60.00......... = $ | | 67,500 |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | Garage/Carport 150      Sq. Ft. @ $ .............. = $ | | |
| The subjects reproduction/replacement cost is based on data from | Total Estimate of Cost-New .................................. = $ | | 210,150 |
| building-cost.net. Depreciation is estimated using the age-life | Less        Physical    Functional    External | | |
| method. Land value was derived using vacant land sales data and | Depreciation   21,015 |   30,000 | = $ ( | 51,015 |
| land allocation method for the area. External depreciation due to | Depreciated Cost of Improvements .......................... = $ | | 159,135 |
| low economic base of neighborhood and is normal for the area | "As-is" Value of Site Improvements ......................... = $ | | |
| and does not affect the subjects marketability.  Remaining | | | |
| economic life expectancy estimated to be 50+/-60 years. | | | |
| Estimated Remaining Economic Life (HUD and VA only)        54 Years | INDICATED VALUE BY COST APPROACH ..................... = $ | | 169,135 |

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

| | | |
|---|---|---|
| Estimated Monthly Market Rent $        X Gross Rent Multiplier        = $ | | Indicated Value by Income Approach |
| Summary of Income Approach (including support for market rent and GRM) | | |

### PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)?  [ ] Yes  [ ] No   [ ] Detached  [ ] Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal name of project

| | | |
|---|---|---|
| Total number of phases | Total number of units | Total number of units sold |
| Total number of units rented | Total number of units for sale | Data source(s) |

Was the project created by the conversion of an existing building(s) into a PUD?  [ ] Yes  [ ] No   If Yes, date of conversion.

Does the project contain any multi-dwelling units?  [ ] Yes  [ ] No   Data source(s)

Are the units, common elements, and recreation facilities complete?  [ ] Yes  [ ] No   If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?  [ ] Yes  [ ] No   If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

## Uniform Residential Appraisal Report

File No. 5766414_63902918

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

## Uniform Residential Appraisal Report

File No. 5766414_63902918

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

## Uniform Residential Appraisal Report

File No. 5766414_63902918

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

---

**APPRAISER**

Signature _____
Name Andre Lanier
Company Name PCI Appraisal Services
Company Address 47 W. Polk, Suite 100-269, Chicago, IL 606

Telephone Number (773) 386-6666
Email Address andre@pciappraisals.com
Date of Signature and Report February 09, 2009
Effective Date of Appraisal 02/09/2009
State Certification # 556.003426
or State License # _____
or Other (describe) _____ State # _____
State IL
Expiration Date of Certification or License 9/30/2009

ADDRESS OF PROPERTY APPRAISED
8920 S Chappel Ave
Chicago, IL  60617-2919

APPRAISED VALUE OF SUBJECT PROPERTY $ 170,000

LENDER/CLIENT
Name N/A
Company Name CITIBANK/CBNA
Company Address 1000 Technology Dr
O'Fallon, MO 63368
Email Address N/A

**SUPERVISORY APPRAISER (ONLY IF REQUIRED)**

Signature _____
Name _____
Company Name _____
Company Address _____

Telephone Number _____
Email Address _____
Date of Signature _____
State Certification # _____
or State License # _____
State _____
Expiration Date of Certification or License _____

SUBJECT PROPERTY
☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
   Date of Inspection _____
☐ Did inspect interior and exterior of subject property
   Date of Inspection _____

COMPARABLE SALES
☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
   Date of Inspection _____

## Uniform Residential Appraisal Report

File No. 5766414_63902918

| FEATURE | SUBJECT | COMPARABLE SALE NO. 4 | | COMPARABLE SALE NO. 5 | | COMPARABLE SALE NO. 6 | |
|---|---|---|---|---|---|---|---|
| Address | 8920 S Chappel Ave | 8960 S Euclid Ave | | 9110 S Euclid Ave | | | |
| | Chicago, IL 60617-2919 | Chicago, IL 60617 | | Chicago, IL 60617 | | | |
| Proximity to Subject | | 0.13 miles SW | | 0.27 miles SW | | | |
| Sale Price | $ Refinance | $ | 220,000 | $ | 199,900 | $ | |
| Sale Price/Gross Liv. Area | $ sq. ft. | $ 141.03 sq. ft. | | $ 143.71 sq. ft. | | $ sq. ft. | |
| Data Source(s) | | MLS# 06952590 216 DOM day | | MLS# 07127581 1 DOM days | | | |
| Verification Source(s) | | MLSNI/county recorder | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | SP:LP 96% | -8,800 | SP:LP 96% | -7,996 | | |
| Concessions | | | | | | | |
| Date of Sale/Time | | Active listing | | Pending | | | |
| Location | Urban | Urban | | Urban | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | | |
| Site | 6,400 Sq.Ft. | 4904 Sq. Ft. | | 4000 Sq. Ft. | | | |
| View | Residential | Residential | | Residential | | | |
| Design (Style) | One story split | level One story | | One story split | | | |
| Quality of Construction | Average | Average | | Average | | | |
| Actual Age | 48 | 55 | | 50 | | | |
| Condition | Average | Average | | Average | | | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 5  3  2 | 5  3  1.5 | +500 | 5  3  1.5 | +500 | | |
| Gross Living Area | 1,585 sq. ft. | 1,560 sq. ft. | +375 | 1,391 sq. ft. | +2,910 | sq. ft. | |
| Basement & Finished | Full finished | Full finished | | Full finished | | | |
| Rooms Below Grade | REC | Rec | | Rec | | | |
| Functional Utility | Average | Average | | Average | | | |
| Heating/Cooling | GFAC | GFAC | | GFAC | | | |
| Energy Efficient Items | Typical | Typical | | Typical | | | |
| Garage/Carport | 1-car garage | 2-car garage | -1,000 | 2-car garage | -1,000 | | |
| Porch/Patio/Deck | Patio | Patio | | Patio | | | |
| Updated Kitchens/I | Average | Superior | -15,000 | Superior | -15,000 | | |
| | | | | | | | |
| | | | | | | | |
| Net Adjustment (Total) | | ☐ + ☒ - $ | 23,925 | ☐ + ☒ - $ | 20,586 | ☐ + ☐ - $ | |
| Adjusted Sale Price | | Net Adj. -10.9% | | Net Adj. -10.3% | | Net Adj. % | |
| of Comparables | | Gross Adj. 11.7% $ | 196,075 | Gross Adj. 13.7% $ | 179,314 | Gross Adj. % $ | |

| ITEM | SUBJECT | COMPARABLE SALE NO. 4 | COMPARABLE SALE NO. 5 | COMPARABLE SALE NO. 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | No other known sales | No other known sales | No other known sales | |
| Price of Prior Sale/Transfer | | Within prior 36 months | Within prior 12 months | |
| Data Source(s) | | MLSNI/country recorder | MLSNI/county recorder | |
| Effective Date of Data Source(s) | 02/08/2009 | 02/08/2009 | 02/08/2009 | |

Summary of Sales Comparison Approach    No other sales than noted above

Neighborhood-Market Conditions:

Research indicates property values of 3bed single family properties in subject neighborhood of Calumet Heights -8048 are declining at this time. Declining market due to over supply and REO activity. Current median closed sales price of $83k is 33% lower than 12 months ago (2.75% mthly). Area Market Statistics: # of sales past 6 months 20,  ASP $110k SP: LP 96% AMT 74 days Low $21k, High $220k. Source MLSNI

Granularity of subject market statistics:

Appraiser does not rely solely on general MLS/census/zip code wide market statistics. Appraiser builds its comparable market statistics on researched data which is similar, proximate and most current  to subject. For this assignment that is 3 bedroom single family in Calumet Heights-8048 neighborhood of Chicago. This is the most accurate defined neighborhood/market.

Forecloresure/REO Activity:

Appraiser has reviews closed sales over the six months, as well as current available listings from within the subject's market area. My analysis indicated approximately 20 closed sales over past 6 months. Eleven (11) was found be REO/foreclosure listings. This equates to approximately 55% of these listings. Thus, REO/foreclosure activity is considered prevalent at this time. No REO sales or listings were included in appraisal, however, the presence of these types of transactions do appear to be putting additonal downward pressure on sales prices, as well as increasing typical marketing time.

Legal Description:

FIRREA requires a legal description to be provided, however, FIRREA has provisions for instances when information is unavailable to the appraiser. The subject's legal description was not made available. Effort was made to obtain the legal description, without success.

Adverse Environmental Factors:

No adverse environmental factors were visibly evident to the appraiser. However, this will serve as notice to the user that this appraiser had no formal training in detecting asbestos, lead-based paint, radon gas, toxic insulation, toxic waste or any other such environmental concerns. Our appraisal was based on the assumption that no such detrimental materials or conditions were present. Flood Zone determination represents a "good faith" interpretation of Federal Flood maps along with other maps and information from government and private sources and the requester. No responsibility was assumed for the accuracy of completeness of these information sources.

Sales Comparison  Photos:

Some of the comparable photographs used in the supportive analysis were obtained via the local Multiple Listing Service. These photographs are utilized to represent the condition of the comparable properties at the time of sale. This is done primarily due to the possibility that a new owner may alter the residence after the purchase date. The best exterior description of these sales is at the time of their purchase. In addition, per discrimination law, appraiser is not allowed to use any photos that capture person/s in front of comparable properties. Thus, MLS photographs are provided to insure proper comparison. Please note, these comparable sales have been inspected from the exterior by the appraiser to determine if significant external obsolescence is present.

Final Reconcilation:

The typical buyer or seller would most readily understand and apply the Sales Comparison Approach, and this approach was considered most applicable to the subject property. The Income Approach was deemed not applicable for owner occupied (single family and condo) residences and is typically not utilized as per Standard Rule 1-4(c), unless specifically required by the client.  This appraisal was ordered by LSI . This is a Complete Appraisal written in the Summary Appraisal format. The digital signature and/or signatures used in this appraisal report are password protected and are in conformance with  USPAP AND FIRREA guidelines.

Final Reconcilation:

The typical buyer or seller would most readily understand and apply the Sales Comparison Approach, and this approach was considered most applicable to the subject property. The Income Approach was deemed not applicable for owner occupied (single family and condo) residences and is typically not utilized as per Standard Rule 1-4(c), unless specifically required by the client.  This appraisal was ordered by LSI . This is a Complete Appraisal written in the Summary Appraisal format. The digital signature and/or signatures used in this appraisal report are password protected and are in conformance with  USPAP AND FIRREA guidelines.

• U RAR : Sales Comparison Analysis - Summary of Sales Comparison Approach Sales recited are from subject neighborhood and are in acceptable proximity to the subject. Subject GLA varies from some of the comparables by more than 25% due to diverse design of one story ranch homes in subject neighborhood and is typical and does not affect marketability. Exceeded guidelines for net and gross adjustment percentages due to lump sum

adjustments for declining market, sp:lp, sales concessions, GLA and upgraded conditions of comparables. And as such subject and comparables adjusted values due not bracket due to these adjustments. Comparables are the most recent and most comparable found.  All value affecting dissimilarities were adjusted according to market reaction. Thorough research indicated that the comparables chosen are the most similar to the subject in design, location/proximity, GLA, appeal and construction. They appear to be arms length transactions.  Market research shows no sales price reaction to age and site size of subject and comparabes therefore no adjustments was deemed necessary.  Subject property final valuation higher than neighborhood predominate value because of its superior condition and GLA. Greater weight is given Sales #1 and #2 in the reconciliation.

SUBJECT PROPERTY PHOTO ADDENDUM

| | |
|---|---|
| Borrower: Charles Routen & Gloria Swanson | File No.: 5766414_63902918 |
| Property Address: 8920 S Chappel Ave | Case No.: |
| City: Chicago | State: IL Zip: 60617-2919 |
| Lender: CITIBANK/CBNA | |



**FRONT VIEW OF
SUBJECT PROPERTY**

Appraised Date: February 9, 2009
Appraised Value: $ 170,000



**REAR VIEW OF
SUBJECT PROPERTY**



**STREET SCENE**

Photograph Addendum

| Borrower: Charles Roulen & Gloria Swanson | | File No.: 5766414_63902918 | |
|---|---|---|---|
| Property Address: 8920 S Chappel Ave | | Case No.: | |
| City: Chicago | State: IL | | Zip: 60617-2919 |
| Lender: CITIBANK/CBNA | | | |



Living Area



Kitchen



Bathroom 1



Bathroom 2



Basement Living Area



Basement Living Area

COMPARABLE PROPERTY PHOTO ADDENDUM

| Borrower: Charles Routen & Gloria Swanson | File No.: 5766414_63902918 |
|---|---|
| Property Address: 8920 S Chappel Ave | Case No.: |
| City: Chicago | State: IL | Zip: 60617-2919 |
| Lender: CITIBANK/CBNA | |



COMPARABLE SALE #1

1924 E 92nd St
Chicago, IL 60617
Sale Date: 10/03/2008 SD
Sale Price: $ 210,000



COMPARABLE SALE #2

8947 S Cornell Ave
Chicago, IL 60617
Sale Date: 01/28/2009 SD
Sale Price: $ 210,000



COMPARABLE SALE #3

8822 S Oglesby Ave
Chicago, IL 60617
Sale Date: 11/13/2008 SD
Sale Price: $ 170,000

COMPARABLE PROPERTY PHOTO ADDENDUM

| | | |
|---|---|---|
| Borrower: Charles Routen & Gloria Swanson | File No.: 5766414_63902918 | |
| Property Address: 8920 S Chappel Ave | Case No.: | |
| City: Chicago | State: IL | Zip: 60617-2919 |
| Lender: CITIBANK/CBNA | | |



**COMPARABLE SALE #4**

8960 S Euclid Ave
Chicago, IL 60617
Sale Date: Active listing
Sale Price: $ 220,000



**COMPARABLE SALE #5**

9110 S Euclid Ave
Chicago, IL 60617
Sale Date: Pending
Sale Price: $ 199,900



**COMPARABLE SALE #6**

Sale Date:
Sale Price: $

LOCATION MAP

| | |
|---|---|
| Borrower: Charles Routen & Gloria Swanson | File No.: 5766414_63902918 |
| Property Address: 8920 S Chappel Ave | Case No.: |
| City: Chicago | State: IL | Zip: 60617-2919 |
| Lender: CITIBANK/CBNA | |



FLOORPLAN

| Borrower: Charles Routen & Gloria Swanson | File No.: 5766414 63902918 |
|---|---|
| Property Address: 8920 S Chappel Ave | Case No.: |
| City: Chicago | State: IL | Zip: 60617-2919 |
| Lender: CITIBANK/CBNA | |



Borrower: Charles Routen & Gloria Swanson — File No.: 5766414 63902918

Property Address: 8920 S Chappel Ave — Case No.:

City: Chicago — State: IL — Zip: 60617-2919

Lender: CITIBANK/CBNA



State of Illinois — Department of Financial and Professional Regulation — Division of Professional Regulation

Certified Residential Real Estate Appraiser

ANDRE R LANIER
47 W POLK STREET
SUITE 100-289
CHICAGO, IL 60605

| Borrower: Charles Routen & Gloria Swanson | File No.: 5766414 63902918 |
| Property Address: 8920 S Chappel Ave | Case No.: |
| City: Chicago | State: IL | Zip: 60617-2919 |
| Lender: CITIBANK/CBNA | |

FILE NO. 5766414 63902918

## Uniform Residential Appraisal Report    File #5766414

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

SUPERVISORY APPRAISER'S CERTIFICATION: The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

APPRAISER

Signature _Andre Lanier_
Name _Andre Lanier_
Company Name _PCI Appraisal Services_
Company Address _47 W. Polk, Suite 100-269, Chicago, IL 60605_

Telephone Number (773) 398-6666
Email Address _andre@pciappraisals.com_
Date of Signature and Report _February 09, 2009_
Effective Date of Appraisal _02/09/2009_
State Certification # _556.003426_
or State License # _____
or Other (describe) _____    State # _____
State _IL_
Expiration Date of Certification or License _9/30/2009_

ADDRESS OF PROPERTY APPRAISED:
_8920 S Chappel Ave_
_Chicago, IL 60617-2919_
APPRAISED VALUE OF SUBJECT PROPERTY $ _130,000_
LENDER/CLIENT
Name _N/A_
Company Name _CITIBANK/CBNA_
Company Address _1000 Technology Dr, O'Fallon, MO 63368_

Email Address _N/A_

SUPERVISORY APPRAISER (ONLY IF REQUIRED)

Signature _____
Name _____
Company Name _____
Company Address _____

Telephone Number _____
Email Address _____
Date of Signature _____
State Certification # _____
or State License # _____
State _____
Expiration Date of Certification or License _____

SUBJECT PROPERTY

☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
    Date of Inspection _____
☐ Did inspect interior and exterior of subject property
    Date of Inspection _____

COMPARABLE SALES

☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
    Date of Inspection _____

Freddie Mac Form 70 March 2005                    Page 6 of 6                    Fannie Mae Form 1004 March 2005

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. —

# EXHIBIT 3



1000 TECHNOLOGY DRIVE MS-760
O'FALLON MO 63368

February 14, 2009


        CHARLES M ROUTEN
        GLORIA E SWANSON
        8920 S. CHAPPEL AVE
        CHICAGO IL 60617

Dear CHARLES M ROUTEN and GLORIA E SWANSON:

Thank you for your recent Fixed Rate Home Equity Loan application. We regret to inform you that we are unable to approve your request for the following reason(s):

CHARLES M ROUTEN
   - INSUFFICIENT EQUITY RELATIVE TO THE VALUE OF THE COLLATERAL

GLORIA E SWANSON
   - INSUFFICIENT EQUITY RELATIVE TO THE VALUE OF THE COLLATERAL


If your financial situation has changed or you can provide additional information, please call us at (866) 247-5358, Monday through Friday, 7:30 AM - 7:00 PM and Saturday 8:00 AM - 3:00 PM CT*

Sincerely,

Terry Johnson                          Reference #109020405790000 (JT20-1 MJ20S)
Citibank, N.A.

See reverse side for important information.
*To ensure quality service, incoming calls are randomly monitored. For TTY service, call (800) 945-0258.



# EXHIBIT 4



March 2, 2009

Charles M. Routen
Gloria E. Swanson
8920 Chappel Avenue
Chicago, IL 60617


RE:  Citibank Home Equity Application Number 109020405790000

Dear Mr. Routen and Ms. Swanson:

This letter is in response to your correspondence addressed to Vikram Pandit, CEO of Citigroup, dated February 17, 2008, in connection with the aforementioned application. I am responding on behalf of Citibank as an Executive Response Liaison.

Your letter expressed dissatisfaction with the application process for the above referenced home equity line of credit.  We have reviewed your account and find the following occurred:

- An application was filed on February 4, 2009.  You stated that the value of your property was $270,000.   On that same day, Citibank's underwriting department reviewed your application, conditionally approved your application and ordered an appraisal evaluation to be completed on your property.
- On February 5, 2009, an exterior property evaluation report was ordered.  After further review of your file, the exterior property evaluation report was cancelled and instead, a full appraisal inspection was ordered.  This was done to further verify the valuation of your property.  An appraisal upgrade was also necessary to meet our Citibank policy guidelines.
- On February 10, 2009, Citibank received the evaluation report.  Citibank's underwriting department reviewed the full appraisal on February 11, 2009.  Based on our review, Citibank concluded that the estimated market value was $170,000, significantly lower than your stated value of $270,000.  Therefore a declination letter was mailed to you stating the combined loan to value exceeded our Citibank policy guidelines.
- On February 17, 2009, you had called into Citibank for a status on your loan application.  At that time, Citibank advised you that your loan application had been declined.

Included this letter is a copy of the full appraisal completed on your property.  As of today, Citibank has re-reviewed your current property appraisal for any quality errors or value deficiencies.  Per Citibank's Collateral Risk Management group, none are to be found and this appraised value is correct and supported at $170,000.

Routen / Swanson
Page Two



Our records show that you previously spoke with June Cimino, whom is the assistant manager at your local Citibank branch. Your letter states of dissatisfaction with the conversation you had with her. While June explained to you that Citigroup is trying to put more credit into the hands of consumers, Citibank still must follow underwriting guidelines of credit, employment, income and property appraisal evaluations. She did explain that she could not discourage you from applying and Citibank would be more than happy to process your application.

Please be assured that we have thoroughly reviewed the appraisal for your property and that the value of $170,000 is supported. Our research indicates that decreasing sales and lower median prices support this appraised property value. Please note that this review was escalated to the highest channel in underwriting for review. Based on the above information, your loan application for the home equity loan still remains in a declined status due to insufficient equity relative to the loan amount requested.

We apologize that the home equity application process did not meet your expectations. We regret any inconvenience or frustration you may have experienced. Please be assured we have reviewed this matter with management and all applicable staff. Should you have any further questions regarding this matter, please call me directly at 1-800-695-0384, extension 28807, Monday to Friday 8:00 a.m. to 5:00 p.m. CT. Thank you.

Sincerely,

Lori A. Chenot
Executive Response Liaison





EXHIBIT
4-2

March 25, 2009

Charles M. Routen
Gloria E. Swanson
8920 Chappel Avenue
Chicago, IL  60617


RE:  Citibank Home Equity Application Number 109020405790000

Dear Mr. Routen and Ms. Swanson:

This letter is in reference to your mail correspondence received on March 19, 2009, in connection with the aforementioned application.  I am responding on behalf of Citibank as an Executive Response Liaison.

As I mentioned in my previous correspondence dated March 2, 2009, you stated to Citibank that the value of your property was $270,000.  Citibank did document your loan application with your personal assessment of the property value, which as a result, did not support Citibank's full appraisal inspection.

Please note that under no circumstances did Citibank question your honesty or integrity. We sincerely apologize for your frustration and regret that we are unable to provide you with a home equity line of credit.  Please be assured we have shared your feedback with management and that our legal department has reviewed this matter.

Should you have any further questions regarding this matter, please call me directly at 1-800-695-0384, extension 28807, Monday to Friday 8:00 a.m. to 5:00 p.m. CT.  Thank you.

Sincerely,

Lori A. Chenot
Executive Response Liaison

A member of citigroup

# EXHIBIT 5

**EXHIBIT**
**5**

March 18, 2009

Ms. Lori Chenot
Executive Response Liaison
CITI
1000 Technology Dr.
O'Fallon, MO 63368

     Re:    Charles Routen and Gloria Swanson
              8920 S. Chappel Avenue, Chicago, IL 60617
              Letter dated February 17, 2008 to Vikram Pandit, CEO of Citigroup

Dear Ms. Chenot:

I am in receipt of your letter dated March 2, 2009 that purports to respond to my letter of February17, 2009 addressed to Vikram Pandit, CEO of Citigroup.

While you outline the chain of events of our loan application, I am disappointed and indignant that you would imply that the only reason we received an initial "conditional approval" was that I "misrepresented the value of my home at $270,000". I am appalled that you would cover your bank's inconsistencies and possible discrimination with this kind of blatant attack on my credibility.

I have evidence that my home was appraised at $260,000 by a reputable bank in 2004 (LaSalle Bank, now Bank of America) for an equity loan. While home values have dropped due to the current economy, most real estate agents and appraisers will confirm that in the Chicago area, most property values have only seen a 20 to 25% decrease in value. Some areas have seen even less of a decrease in value. Also, anyone who has been in their home going on 21 years would likely have stable equity in their property. It is only the homeowners who purchased homes in the last few years who would find themselves in an equity rut or possibly owing more on their homes than the home is currently valued at.

I do not understand why the appraiser chose the homes he chose for comparison to my home regarding our loan application. I am familiar with the home styles in the immediate neighborhood, and the photographs of the homes that Mr. Lanier used are in all likelihood mostly *two-bedroom, ranch style homes*.

My home is a *three-bedroom, tri-level home with attached garage, cathedral ceiling, sitting on two city lots*. This is no comparison to the homes Mr. Lanier used in his comparisons. I also do not understand why Mr. Lanier chose homes 4 to 5 blocks away when a home on my block (8958 S. Chappel) sold last August of 2008 for $325,000. There is also a home directly across the street from my home at 8927 S. Chappel that is currently on the market and listed with Century 21 Realty for $260,000. That home is a two-bedroom home going for $260,000. The appraisal for the home at 8927 S. Chappel would have to come in for least $260,000 in order for the owner to list his home at that price.

Lori A. Chenot
CITI
March 18, 2009
Page 2


Additionally, my home is currently insured by Allstate Insurance Company where it has been insured for the last 20 years. Allstate has my home insured for $291,000. Kindly tell me when or under what circumstances would an insurance company insure a home for over $100,000 more than it is worth? If you stand by Mr. Lanier's appraisal that our home is worth $170,000, that means that Allstate Insurance would be paying us over $100,000 more than our home is worth if something happened to our home. That proposition is ludicrous. If Allstate has our home insured for $291,000, it is worth at least that or not much less.

I feel that I have evidence to impeach Mr. Lanier's appraisal, but I wrote to your CEO first because Citigroup made an effort to get news on local TV that they were going to make a concerted effort to get some of the "bailout" money that it got from the government (and taxpayers) to the consumers? Yet, you have reneged.

Instead of trying to resolve this amicably, you have taken the position of offending me by attempting to impugn my integrity by stating that I intentionally overstated the value of my home. At this point, the purpose of this letter is to inform you that my next steps will allow for a third-party (i.e., a court system) to judge whether or not Mr. Lanier's appraisal was correct and whether Citibank (as you have stated) thoroughly reviewed the appraisal for our property in your continued support of that appraisal, i.e., whether this is redlining discrimination against black homeowners and neighborhoods or simply a ploy for Citigroup to keep all of the bailout money and distribute it where it chooses.

Very truly yours,


Gloria E. Swanson
Charles M. Routen
8920 S. Chappel Avenue
Chicago, IL 60617
Day No. 312-701-7514
Home 773-731-6014
Home Fax: 773-731-0391

cc: Vkiram Pandit, CEO
    Citigroup

# EXHIBIT 6

| Borrower/Client | GLORIA E SWANSON | | File No. | 8920GESMWV |
|---|---|---|---|---|
| Property Address | 8920 S Chappel Ave | | | |
| City | CHICAGO | County COOK | State IL | Zip Code 60617-2919 |
| Lender | GLORIA SWANSON | | | |

## TABLE OF CONTENTS



EXHIBIT
6

Letter of Transmittal ............................................................................................................... 1
URAR .................................................................................................................................... 2
Subject Photos ....................................................................................................................... 8
Subject Photos Interior ........................................................................................................... 9
Subject Photos Interior ........................................................................................................... 10
Additional Comparables 4-6 ................................................................................................... 11
Comparable Photos 1-3 .......................................................................................................... 12
Comparable Photos 4-6 .......................................................................................................... 13
General Text Addendum .......................................................................................................... 14
Building Sketch (Page - 1) ...................................................................................................... 15
Location Map .......................................................................................................................... 16

MIDWEST VALUATIONS
8116 S WESTERN AVENUE
CHICAGO,IL 60620


GLORIA SWANSON
3200 PARK CENTER, SUITE 150
COSTA MESA, CA 92626

Re: Property:     8920 S Chappel Ave
                  CHICAGO, IL 60617-2919
    Borrower:     GLORIA E SWANSON
    File No.:     8920GESMWV


In accordance with your request, we have appraised the above referenced property.  The report of that appraisal is attached.

The purpose of this appraisal is to estimate the market value of the property described in this appraisal report, as improved, in unencumbered fee simple title of ownership.

This report is based on a physical analysis of the site and improvements, a locational analysis of the neighborhood and city, and an economic analysis of the market for properties such as the subject.  The appraisal was developed and the report was prepared in accordance with the Uniform Standards of Professional Appraisal Practice.

The value conclusions reported are as of the effective date stated in the body of the report and contingent upon the certification and limiting conditions attached.

It has been a pleasure to assist you.  Please do not hesitate to contact me or any of my staff if we can be of additional service to you.


Sincerely,


ERIC M GLENN

FROM:
MIDWEST VALUATIONS
8116 S WESTERN AVE
CHICAGO,I 60620

| INVOICE | DATE | REFERENCE |
|---------|------|-----------|
| 8920GESMWV | 04/13/2009 | 8920GESMWV |

TO:
GLORIA SWANSON
8920 S CHAPPEL AVE
CHICAGO,IL 60617

| DESCRIPTION | AMOUNT |
|-------------|--------|
| BORROWER: SWANSON  **(PAID IN FULL)** | 0.00 |
| | |
| Subtotal | $ |
| Late Fee | $ |
| **TOTAL** | $ |

Midwest Valuations (708) 895-8334　　　　　　　　File No. 8920GESMWV Page #2

# Uniform Residential Appraisal Report

8920GESMWV
File # 8920GESMWV

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| Property Address 8920 S Chappel Ave | City CHICAGO | State IL | Zip Code 60617-2919 |
|---|---|---|---|

Borrower GLORIA E SWANSON　　Owner of Public Record GLORIA E SWANSON　　County COOK

Legal Description SIMON J (MORANDS) RESUB OF EH OF WH OF NW SW NE SEC 01-37-14

| Assessor's Parcel # 25-01-216-075-0000 | Tax Year 2007 | R.E. Taxes $ 1,818.65 |
|---|---|---|

Neighborhood Name CALUMET HEIGHTS　　Map Reference 23844　　Census Tract 4804.00

Occupant ☒ Owner ☐ Tenant ☐ Vacant　　Special Assessments $ N/A　　☐ PUD　HOA $ ☐ per year ☐ per month

Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)

Assignment Type ☐ Purchase Transaction ☒ Refinance Transaction ☐ Other (describe)

Lender/Client GLORIA SWANSON　　Address 8920 S CHAPPEL AVE

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☐ Yes ☒ No

Report data source(s) used, offering price(s), and date(s). MLSNI

I ☐ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $ N/A　Date of Contract　Is the property seller the owner of public record? ☐ Yes ☐ No　Data Source(s)

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☐ No

If Yes, report the total dollar amount and describe the items to be paid.

**Note: Race and the racial composition of the neighborhood are not appraisal factors.**

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|
| Location ☒ Urban ☐ Suburban ☐ Rural | | | Property Values ☐ Increasing ☐ Stable ☒ Declining | | | PRICE | AGE | One-Unit | 85 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | | | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | | | $ (000) | (yrs) | 2-4 Unit | 5 % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | | | Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | | | 26 Low 0 | | Multi-Family | 5 % |
| Neighborhood Boundaries NORTH:87TH ST, SOUTH: 95TH ST EAST: S CHICAGO AVE WEST:STONY | | | | | | 325 High 100 | | Commercial | 5 % |
| ISLAND AVE | | | | | | 129 Pred. 50 | | Other | 0 % |

Neighborhood Description MARKETABILITY IS CONSIDERED AVERAGE AS MOST NEEDED SUPPORT SERVICES (I.E. SHOPPING, SCHOOLS AND TRANSPORTATION) ARE REASONABLY CLOSE. THE SUBJECT IS LOCATED IN CALUMET HEIGHTS COMMUNITY OF CHICAGO, IL. NO ADVERSE FACTORS WERE NOTED.

Market Conditions (including support for the above conclusions) CURRENT HOUSING MARKET TRENDS ARE BELIEVED TO BE DECLINING WITH SUPPLY AND DEMAND IN BALANCE. TYPICAL MARKETING TIME IS 3-6 MONTHS WITH THE MAJORITY OF SALES UTILIZING CONVENTIONAL OR F.H.A. FINANCING WITH NO CONCESSIONS BEING APPARENT.

| Dimensions 50X125 | Area 6,250 Sq.Ft. | Shape RECTANGULAR | View RESIDENTIAL |
|---|---|---|---|

Specific Zoning Classification R-S2　　Zoning Description SINGLE-FAMILY RESIDENTIAL

Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No　If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | ☐ | Water | ☒ | | Street CONCRETE | ☒ | |
| Gas | ☒ | ☐ | Sanitary Sewer | ☒ | | Alley CONCRETE | ☒ | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No　FEMA Flood Zone X　FEMA Map # 17031C0655J　FEMA Map Date 8/19/2008

Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No	If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No	If Yes, describe

THE SITE IS FUNCTIONALLY ADEPT, SIMILAR TO OTHER SITES IN MOST RESPECTS, I.E. ZONING, APPEAL, ETC. TYPICAL UTILITY EASEMENTS ASSIGNED. NO ADVERSE CONDITIONS NOTED.

| General Description | | Foundation | | Exterior Description materials/condition | | Interior materials/condition | |
|---|---|---|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | | ☐ Concrete Slab ☐ Crawl Space | | Foundation Walls CONCRETE/AVG | | Floors CT/CPT/WD/GOOD | |
| # of Stories 1.5 STORY | | ☒ Full Basement ☐ Partial Basement | | Exterior Walls BR/FR/AVG | | Walls PLASTER/AVG | |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | | Basement Area 1,272 sq.ft. | | Roof Surface SHINGLE/AVG | | Trim/Finish WOOD/STAIN/AVG | |
| ☒ Existing ☐ Proposed ☐ Under Const. | | Basement Finish 90 % | | Gutters & Downspouts ALUMINUM/AVG | | Bath Floor CT/GOOD | |
| Design (Style) SPLIT LVL/AVG | | ☐ Outside Entry/Exit ☐ Sump Pump | | Window Type DOUBLE HUNG/AVG | | Bath Wainscot CRMIC TILE/GOOD | |
| Year Built 1961 | | Evidence of ☐ Infestation | | Storm Sash/Insulated YES/AVG | | Car Storage ☐ None | |
| Effective Age (Yrs) 20 | | ☐ Dampness ☐ Settlement | | Screens YES/YES/AVG | | ☒ Driveway # of Cars 1 | |
| Attic ☐ None | | Heating ☒ FWA ☐ HWBB ☐ Radiant | | Amenities ☐ Woodstove(s) # | | Driveway Surface CONCRETE | |
| ☐ Drop Stair ☐ Stairs | | ☐ Other Fuel GAS | | Fireplace(s) # ☒ Fence LINK | | ☒ Garage # of Cars 1 | |
| ☐ Floor ☒ Scuttle | | Cooling ☒ Central Air Conditioning | | ☒ Patio/Deck WD ☐ Porch | | ☐ Carport # of Cars | |
| ☐ Finished ☐ Heated | | ☐ Individual ☐ Other | | ☐ Pool ☐ Other | | ☒ Att. ☐ Det. ☐ Built-in | |

Appliances ☒ Refrigerator ☒ Range/Oven ☒ Dishwasher ☒ Disposal ☐ Microwave ☐ Washer/Dryer ☐ Other (describe)

Finished area above grade contains: 5 Rooms　3 Bedrooms　1.5 Bath(s)　1,590 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.). ENERGY EFFICIENT HOT WATER HEATER, GAS FURNACE, ENERGY EFFICIENT WINDOWS

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.). IMPROVEMENTS ARE IN GOOD CONDITION. NORMAL PHYSICAL DETERIORATION IS ATTRIBUTED TO AVERAGE WEAR AND TEAR. NO FUNCTIONAL OBSOLESCENCE APPEARS EVIDENT. BASED ON LOCATION, NO EXTERNAL OBSOLESCENCE IS EVIDENT.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No　If Yes, describe

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No　If No, describe

| Freddie Mac Form 70 March 2005 | Page 1 of 6 | Fannie Mae Form 1004 March 2005 |
|---|---|---|

8920GESMWV

# Uniform Residential Appraisal Report

File # 8920GESMWV

There are 1 comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 269,900 to $ 269,900 .
There are 4 comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 56,000 to $ 255,000 .

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 8920 S Chappel Ave CHICAGO, IL 60617-2919 | 8847 S CORNELL AVE CHICAGO, IL 60617 | | 1725 E 93RD ST CHICAGO, IL 60617 | | 9124 S CREGIER AVE CHICAGO, IL 60617 | |
| Proximity to Subject | | 0.50 miles W | | 0.61 miles SW | | 0.41 miles SW | |
| Sale Price | $ N/A | | $ 210,000 | | $ 232,500 | | $ 255,000 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 170.04 sq.ft. | | $ 211.36 sq.ft. | | $ 159.77 sq.ft. | |
| Data Source(s) | | MLS #06835200/DOM 33 | | MLS #06851671/DOM 49 | | MLS # 06990454/DOM 53 | |
| Verification Source(s) | | COOK COUNTY ASSESSOR | | COOK COUNTY ASSESSOR | | COOK COUNTY ASSESSOR | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing Concessions | NONE KNOWN | CONVENTIONA NONE KNOWN | | CONVENTIONA NONE KNOWN | | CONVENTIONA POINTS PAID | -5,000 |
| Date of Sale/Time | N/A | 01/28/2009 | | 09/02/2008 | | 07/24/2008 | |
| Location | AVG | AVG | | AVG | | AVG | |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | 6,250 Sq.Ft. | 4,375 Sq.Ft. | | 4,375 Sq.Ft. | | 4,375 Sq.Ft. | |
| View | RESIDENTIAL | RESIDENTIAL | | RESIDENTIAL | | RESIDENTIAL | |
| Design (Style) | SPLIT LVL/AVG | RANCH/AVG | | RANCH/AVG | | SPLIT LVL/AVG | |
| Quality of Construction | BRICK/AVG | BRICK/AVG | | BRICK/AVG | | BRICK/AVG | |
| Actual Age | 48 YRS | 57 YRS | | 53 YRS | | 44 YRS | |
| Condition | GOOD | GOOD | | GOOD | | GOOD | |
| Above Grade Room Count (Total / Bdrms. / Baths) | 5 / 3 / 1.5 | 5 / 3 / 1.5 | | 5 / 3 / 1.5 | | 5 / 3 / 1.5 | |
| Gross Living Area | 1,590 sq.ft. | 1,235 sq.ft. | +8,875 | 1,100 sq.ft. | +12,250 | 1,596 sq.ft. | 0 |
| Basement & Finished Rooms Below Grade | PART BSMT REC RM/BED | FULL BSMT NONE | -5,000 +10,000 | FULL BSMT RR/BED | -5,000 | PART BSMT REC RM/DEN | |
| Functional Utility | 3 BEDROOMS | 3 BEDROOMS | | 3 BEDROOMS | | 3 BEDROOMS | |
| Heating/Cooling | FWA/CA | FWA/CA | | FWA/CA | | FWA/CA | |
| Energy Efficient Items | STANDARD | STANDARD | | STANDARD | | STANDARD | |
| Garage/Carport | 1 CAR GAR | 2 CAR GAR | -2,500 | 2 CAR GAR | -2,500 | 2 CAR GAR | -2,500 |
| Porch/Patio/Deck | PATIO/DECK | DECK | | PATIO | +1,500 | DECK | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| Net Adjustment (Total) | | ☒ + ☐ - | $ 11,375 | ☒ + ☐ - | $ 6,250 | ☐ + ☒ - | $ -7,500 |
| Adjusted Sale Price of Comparables | | Net Adj. 5.4 % Gross Adj. 12.6 % | $ 221,375 | Net Adj. 2.7 % Gross Adj. 9.1 % | $ 238,750 | Net Adj. 2.9 % Gross Adj. 2.9 % | $ 247,500 |

SALES COMPARISON APPROACH

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s) MLS
My research ☒ did ☐ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s) MLS
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | NO SALES WITHIN 36 MO | NO SALES WITHIN 12 MO | NO SALES WITHIN 12 MO | NO SALES WITHIN 12 MO |
| Price of Prior Sale/Transfer | NONE | NONE | NONE | NONE |
| Data Source(s) | MLSNI/ASSESSOR | MLSNI/ASSESSOR | MLSNI/ASSESSOR | MLSNI/ASSESSOR |
| Effective Date of Data Source(s) | 04/12/2009 | 04/12/2009 | 04/12/2009 | 04/12/2009 |

Analysis of prior sale or transfer history of the subject property and comparable sales . THERE WERE NO OTHER SALES OF THE SUBJECT OR COMPARABLES.

Summary of Sales Comparison Approach
***PLEASE REFER TO ADDENDUM***

Indicated Value by Sales Comparison Approach $ 240,000

RECONCILIATION

**Indicated Value by: Sales Comparison Approach $** 240,000 **Cost Approach (if developed) $** 245,237 **Income Approach (if developed) $**

ALL WEIGHT IS PLACED ON THE SALES COMPARISON APPROACH AS THIS APPROACH BEST REFLECTS THE ACTIONS OF TYPICALLY MOTIVATED PARTIES IN AN OPEN MARKET. THERE WAS NO DATA AVAILABLE FOR THE INCOME APPROACH.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair: THE SUBJECT PROPERTY IS APPRAISED IN "AS IS" CONDITION. ALL DIMENSIONS ARE FIELD ESTIMATES.

**Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $** 240,000 **, as of** 04/13/2009 **, which is the date of inspection and the effective date of this appraisal.**

# Uniform Residential Appraisal Report

8920GESMWV
File # 8920GESMWV

**NO ADDITIONAL COMMENTS**

*ADDITIONAL COMMENTS*

## COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)   THE SITE VALUE WAS EXTRACTED FROM THE IMMEDIATE SUBJECT'S MARKET AREA.

| | | | |
|---|---|---|---|
| ESTIMATED ☐ REPRODUCTION OR ☒ REPLACEMENT COST NEW | OPINION OF SITE VALUE | =$ | 25,000 |
| Source of cost data  NATL COST HANDBOOK | DWELLING  1,590 Sq.Ft. @ $  155.00  =$ | | 246,450 |
| Quality rating from cost service  Avg    Effective date of cost data 04/2009 | 1,272 Sq.Ft. @ $  25.00  =$ | | 31,800 |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | =$ | | |
| ACCRUED DEPRECIATION WAS ESTIMATED WITH THE EFFECTIVE | Garage/Carport  325 Sq.Ft. @ $  26.00  =$ | | 8,450 |
| AGE/LIFE METHOD. THE ESTIMATED EFFECTIVE AGE IS 20 | Total Estimate of Cost-New  =$ | | 286,700 |
| YEARS, TOTAL ECONOMIC LIFE IS 75 YEARS. | Less  Physical  Functional  External | | |
| | Depreciation  76,463) | =$( | 76,463) |
| 20/75=26.67% ACCRUED DEPRECIATION | Depreciated Cost of Improvements  =$ | | 210,237 |
| | "As-is" Value of Site Improvements  =$ | | 10,000 |
| Estimated Remaining Economic Life (HUD and VA only)  55 Years | INDICATED VALUE BY COST APPROACH  =$ | | 245,237 |

## INCOME APPROACH TO VALUE (not required by Fannie Mae)

| | | |
|---|---|---|
| Estimated Monthly Market Rent $ | X Gross Rent Multiplier  = $ | Indicated Value by Income Approach |

Summary of Income Approach (including support for market rent and GRM)

## PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)? ☐ Yes ☐ No   Unit type(s) ☐ Detached ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

| | | |
|---|---|---|
| Total number of phases | Total number of units | Total number of units sold |
| Total number of units rented | Total number of units for sale | Data source(s) |

Was the project created by the conversion of existing building(s) into a PUD? ☐ Yes ☐ No  If Yes, date of conversion.

Does the project contain any multi-dwelling units? ☐ Yes ☐ No  Data Source

Are the units, common elements, and recreation facilities complete? ☐ Yes ☐ No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association? ☐ Yes ☐ No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

Freddie Mac Form 70 March 2005          Page 3 of 6          Fannie Mae Form 1004 March 2005

# Uniform Residential Appraisal Report

8920GESMWV
File # 8920GESMWV

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Uniform Residential Appraisal Report

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

# Uniform Residential Appraisal Report

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name ERIC McCLENT | Name |
| Company Name  MIDWEST VALUATIONS | Company Name |
| Company Address  8116 S WESTERN AVE, CHICAGO, IL 60620 | Company Address |
| Telephone Number  (773) 593-2496 | Telephone Number |
| Email Address  mwvchicago@yahoo.com | Email Address |
| Date of Signature and Report  04/12/2009 | Date of Signature |
| Effective Date of Appraisal  04/13/2009 | State Certification # |
| State Certification #  556.002636 | or State License # |
| or State License # | State |
| or Other (describe)  State # | Expiration Date of Certification or License |
| State  IL |  |
| Expiration Date of Certification or License  9/30/2009 | **SUBJECT PROPERTY** |
|  | ☐ Did not inspect subject property |
| **ADDRESS OF PROPERTY APPRAISED** | ☐ Did inspect exterior of subject property from street |
|  8920 S Chappel Ave |     Date of Inspection |
|  CHICAGO, IL 60617-2919 | ☐ Did inspect interior and exterior of subject property |
| APPRAISED VALUE OF SUBJECT PROPERTY $  240,000 |     Date of Inspection |
| **LENDER/CLIENT** |  |
| Name | **COMPARABLE SALES** |
| Company Name  GLORIA SWANSON |  |
| Company Address  8920 S CHAPPEL AVE | ☐ Did not inspect exterior of comparable sales from street |
|  | ☐ Did inspect exterior of comparable sales from street |
| Email Address  appraisals@pvcmurcor.com |     Date of Inspection |

## Subject Photo Page

| Borrower/Client | GLORIA E SWANSON | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 8920 S Chappel Ave | | | | | |
| City | CHICAGO | County | COOK | State | IL | Zip Code 60617-2919 |
| Lender | GLORIA SWANSON | | | | | |



### SUBJECT PROPERTY

8920 S Chappel Ave

| | |
|---|---|
| Sales Price | N/A |
| Gross Living Area | 1,590 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 1.5 |
| Location | AVG |
| View | RESIDENTIAL |
| Site | 6,250 Sq.Ft. |
| Quality | BRICK/AVG |
| Age | 48 YRS |



**Subject Rear**



**Subject Street**

File No. 8920GESMWV) Page #9

## Subject Interior Photo Page

| Borrower/Client | GLORIA E SWANSON | | | | |
|---|---|---|---|---|---|
| Property Address | 8920 S Chappel Ave | | | | |
| City | CHICAGO | County COOK | | State IL | Zip Code 60617-2919 |
| Lender | GLORIA SWANSON | | | | |



### Subject Interior

| | |
|---|---|
| 8920 S Chappel Ave | |
| Sales Price | N/A |
| Gross Living Area | 1,590 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 1.5 |
| Location | AVG |
| View | RESIDENTIAL |
| Site | 6,250 Sq.Ft. |
| Quality | BRICK/AVG |
| Age | 48 YRS |



### Subject Interior



### Subject Interior

## Subject Interior Photo Page

| Borrower/Client | GLORIA E SWANSON | | | | |
|---|---|---|---|---|---|
| Property Address | 8920 S Chappel Ave | | | | |
| City | CHICAGO | County COOK | State IL | Zip Code 60617-2919 |
| Lender | GLORIA SWANSON | | | | |



### Subject Interior

| | |
|---|---|
| 8920 S Chappel Ave | |
| Sales Price | N/A |
| Gross Living Area | 1,590 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 1.5 |
| Location | AVG |
| View | RESIDENTIAL |
| Site | 6,250 Sq.Ft. |
| Quality | BRICK/AVG |
| Age | 48 YRS |



### Subject Interior



### Subject Interior

File No. 8920GESMWV Page #11

# Uniform Residential Appraisal Report

8920GESMWV
File # 8920GESMWV

| FEATURE | SUBJECT | COMPARABLE SALE #4 | | COMPARABLE SALE #5 | | COMPARABLE SALE #6 | |
|---|---|---|---|---|---|---|---|
| Address | 8920 S Chappel Ave | 9030 S YATES BLVD | | | | | |
| | CHICAGO, IL 60617-2919 | CHICAGO, IL 60617 | | | | | |
| Proximity to Subject | | 0.46 miles E | | | | | |
| Sale Price | $ N/A | $ 269,900 | | $ | | $ | |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 211.69 sq.ft. | | $ sq.ft. | | $ sq.ft. | |
| Data Source(s) | | MLS # 07043026/DOM 159 | | | | | |
| Verification Source(s) | | COOK COUNTY ASSESSOR | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | ACTIVE (5%) | -13,495 | | | | |
| Concessions | | NONE KNOWN | | | | | |
| Date of Sale/Time | | ACTIVE | | | | | |
| Location | AVG | AVG | | | | | |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | | | | |
| Site | 6,250 Sq.Ft. | 4,875 Sq.Ft. | | | | | |
| View | RESIDENTIAL | RESIDENTIAL | | | | | |
| Design (Style) | SPLIT LVL/AVG | SPLIT LVL/AVG | | | | | |
| Quality of Construction | BRICK/AVG | BRICK/AVG | | | | | |
| Actual Age | 48 YRS | 53 YRS | | | | | |
| Condition | GOOD | GOOD | | | | | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 5   3   1.5 | 5   3   1.5 | | | | | |
| Gross Living Area | 1,590 sq.ft. | 1,275 sq.ft. | +7,875 | sq.ft. | | sq.ft. | |
| Basement & Finished | PART BSMT | PART BSMT | | | | | |
| Rooms Below Grade | REC RM/BED | REC RM/BED | | | | | |
| Functional Utility | 3 BEDROOMS | 3 BEDROOMS | | | | | |
| Heating/Cooling | FWA/CA | FWA/CA | | | | | |
| Energy Efficient Items | STANDARD | STANDARD | | | | | |
| Garage/Carport | 1 CAR GAR | 2 CAR GAR | -2,500 | | | | |
| Porch/Patio/Deck | PATIO/DECK | PATIO | +2,000 | | | | |
| | | | | | | | |
| | | | | | | | |
| Net Adjustment (Total) | | ☐ + ☒ - | $ -6,120 | ☐ + ☐ - | $ | ☐ + ☐ - | $ |
| Adjusted Sale Price | | Net Adj. 2.3 % | | Net Adj. % | | Net Adj. % | |
| of Comparables | | Gross Adj. 9.6 % | $ 263,780 | Gross Adj. % | $ | Gross Adj. % | $ |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #4 | COMPARABLE SALE #5 | COMPARABLE SALE #6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | NO SALES WITHIN 36 MO | NO SALE IN THE PAST YR | | |
| Price of Prior Sale/Transfer | NONE | NONE | | |
| Data Source(s) | MLSNI/ASSESSOR | MLSNI/ASSESSOR | | |
| Effective Date of Data Source(s) | 04/12/2009 | 04/12/2009 | | |

Analysis of prior sale or transfer history of the subject property and comparable sales    COMPARABLE #4 HAS NOT SOLD WITHIN THE PAST 12 MONTHS.

Analysis/Comments    COMPARABLE #4 IS A CURRENT ACTIVE LISTING TO SUPPORT THE ESTIMATED VALUE OF THE SUBJECT
PROPERTY.

Freddie Mac Form 70 March 2005

Fannie Mae Form 1004 March 2005

Form 1004.(AC) — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Comparable Photo Page

| | |
|---|---|
| Borrower/Client | GLORIA E SWANSON |
| Property Address | 8920 S Chappel Ave |
| City | CHICAGO    County COOK    State IL    Zip Code 60617-2919 |
| Lender | GLORIA SWANSON |



### Comparable 1
**8847 S CORNELL AVE**

| | |
|---|---|
| Prox. to Subject | 0.50 miles W |
| Sale Price | 210,000 |
| Gross Living Area | 1,235 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 1.5 |
| Location | AVG |
| View | RESIDENTIAL |
| Site | 4,375 Sq.Ft. |
| Quality | BRICK/AVG |
| Age | 57 YRS |



### Comparable 2
**1725 E 93RD ST**

| | |
|---|---|
| Prox. to Subject | 0.61 miles SW |
| Sale Price | 232,500 |
| Gross Living Area | 1,100 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 1.5 |
| Location | AVG |
| View | RESIDENTIAL |
| Site | 4,375 Sq.Ft. |
| Quality | BRICK/AVG |
| Age | 53 YRS |



### Comparable 3
**9124 S CREGIER AVE**

| | |
|---|---|
| Prox. to Subject | 0.41 miles SW |
| Sale Price | 255,000 |
| Gross Living Area | 1,598 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 1.5 |
| Location | AVG |
| View | RESIDENTIAL |
| Site | 4,375 Sq.Ft. |
| Quality | BRICK/AVG |
| Age | 44 YRS |

## Comparable Photo Page

| Borrower/Client | GLORIA E SWANSON | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 8920 S Chappei Ave | | | | | |
| City | CHICAGO | County | COOK | State | IL | Zip Code 60617-2919 |
| Lender | GLORIA SWANSON | | | | | |



**Comparable 4**

9030 S YATES BLVD

| | |
|---|---|
| Prox. to Subj. | 0.46 miles E |
| Sales Price | 269,900 |
| G.L.A. | 1,275 |
| Tot. Rooms | 5 |
| Tot. Bedrms. | 3 |
| Tot. Bathms. | 1.5 |
| Location | AVG |
| View | RESIDENTIAL |
| Site | 4,875 Sq.Ft. |
| Quality | BRICK/AVG |
| Age | 53 YRS |

**Comparable 5**

| | |
|---|---|
| Prox. to Subj. | |
| Sales Price | |
| G.L.A. | |
| Tot. Rooms | |
| Tot. Bedrms. | |
| Tot. Bathrms. | |
| Location | |
| View | |
| Site | |
| Quality | |
| Age | |

**Comparable 6**

| | |
|---|---|
| Prox. to Subj. | |
| Sales Price | |
| G.L.A. | |
| Tot. Rooms | |
| Tot. Bedrms. | |
| Tot. Bathrms. | |
| Location | |
| View | |
| Site | |
| Quality | |
| Age | |

## Supplemental Addendum

File No. 8920GESMWV

| Borrower/Client | GLORIA E SWANSON | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 8920 S Chappel Ave | | | | | |
| City | CHICAGO | County | COOK | State | IL | Zip Code 60617-2919 |
| Lender | GLORIA SWANSON | | | | | |

### COMMENTS ON THE SALES COMPARISON APPROACH

THE SUBJECT PROPERTY IS SPLIT LEVEL STYLE HOUSE IN CALUMET HEIGHTS COMMUNITY OF CHICAGO, IL. COMPARABLE SALE #1 WAS SELECTED FOR ITS SIMILARITY TO THE SUBJECT IN ITS AGE AND FUTILITY. COMPARABLE SALE #2 WAS SELECTED FOR ITS LOCATION AND AGE BASEMENT. COMPARABLE SALE #3 WAS SELECTED FOR ITS SIMILAR DESIGN AND BEDROOM COUNT.   EMPHASIS IS PLACED ON COMPARABLE SALE #2 FOR ITS CONSISTENT ADJUSTED VALUE.   DUE TO A LACK OF SALES, SALE #1 AND #2 EXCEED SIX MONTHS IN SALE TIME.

### COMMENT ON DIGITAL PHOTOGRAPHS

THIS REPORT CONTAINS DIGITAL PHOTO IMAGES OF THE SUBJECT AND COMPARABLE PROPERTIES. I/WE CERTIFY THAT THE DIGITAL PHOTO IMAGES CONTAINED IN THIS REPORT HAVE NOT BEEN EDITED OR ALTERED IN ANY WAY SO AS TO MISLEAD THE READER OF THIS REPORT.

### COMMENTS ON USE OF DIGITAL SIGNATURES

THIS APPRAISAL REPORT CONTAINS DIGITAL SIGNATURES THAT MEET THE REQUIREMENTS OF THE UNIFORM STANDARDS OF PROFESSIONAL APPRAISAL PRACTICE (USPAP). THE SOFTWARE PROGRAM USED TO GENERATE THIS APPRAISAL REPORT CONTAINS A DIGITAL SIGNATURE SECURITY FEATURE WHICH UTILIZES PERSONAL PASSWORDS TO PROTECT DIGITAL SIGNATURES. EACH APPRAISER HAS SOLE PERSONALIZED CONTROL OF AFFIXING HIS/HER DIGITAL SIGNATURE TO A REPORT. THE APPRAISAL REPORT CAN NOT BE MODIFIED WITHOUT THE PERMISSION OF EVERY APPRAISER WHO HAS SIGNED THE REPORT. ELECTRONICALLY AFFIXING A SIGNATURE TO A REPORT CARRIES THE SAME LEVEL OF AUTHENTICITY AND RESPONSIBILITY AS AN INK SIGNATURE ON A PAPER COPY REPORT.

### ENVIRONMENTAL COMMENTS

THERE WERE NO OBSERVED ITEMS OF ENVIRONMENTAL IMPACT.  HOWEVER, IT SHOULD BE NOTED THAT THIS APPRAISER HAS HAD NO FORMAL TRAINING RELATIVE TO THE DETERMINATION OF ASBESTOS, LEAD PAINT, RADON GAS, TOXIC WASTE OR ANY OTHER SUCH ENVIRONMENTAL CONCERNS.  IT IS SUGGESTED THAT IF THE CLIENT HAS CONCERNS RELATIVE TO THESE MATTERS, A PROFESSIONAL BE CONTACTED TO EXAMINE THE PROPERTY AND PROVIDE AN APPROPRIATE REPORT.

### SUMMARY APPRAISAL REPORT

THIS IS A SUMMARY APPRAISAL REPORT WHICH IS INTENDED TO COMPLY WITH THE REPORTING REQUIREMENTS SET FORTH UNDER STANDARDS 2-2(B) OF THE UNIFORM STANDARDS OF PROFESSIONAL APPRAISAL PRACTICE FOR A SUMMARY APPRAISAL REPORT. AS SUCH, IT PRESENTS ONLY SUMMARY DISCUSSIONS OF THE DATA, REASONING, AND ANALYSES THAT WERE USED IN THE APPRAISAL PROCESS TO DEVELOP THE APPRAISER'S OPINION OF VALUE. SUPPORTING DOCUMENTATION THAT IS NOT PROVIDED WITH THE REPORT CONCERNING THE DATA, REASONING, AND ANALYSIS IS RETAINED IN THE APPRAISER'S FILE. THE DEPTH OF THE DISCUSSION CONTAINED IN THIS REPORT IS SPECIFIC TO THE NEEDS OF THE CLIENT AND FOR THE INTENDED USE STATED IN THIS REPORT.  THE APPRAISER IS NOT RESPONSIBLE FOR UNAUTHORIZED USE OF THIS REPORT.

[File No. 8920GESMWVI Page #15]

## Building Sketch

| Borrower/Client | GLORIA E SWANSON | | | | |
|---|---|---|---|---|---|
| Property Address | 8920 S Chappel Ave | | | | |
| City | CHICAGO | County COOK | | State IL | Zip Code 60617-2919 |
| Lender | GLORIA SWANSON | | | | |



Sketch by Apex IV™

Comments:

| AREA CALCULATIONS SUMMARY | | | |
|---|---|---|---|
| Code | Description | Net Size | Net Totals |
| GLA1 | First Floor | 750.0 | 750.0 |
| GLA2 | Second Floor | 840.0 | 840.0 |
| GAR | Garage | 325.0 | 325.0 |
| Net LIVABLE Area | | (Rounded) | 1590 |

| LIVING AREA BREAKDOWN | | |
|---|---|---|
| Breakdown | | Subtotals |
| First Floor | | |
| 25.0  x  30.0 | | 750.0 |
| Second Floor | | |
| 28.0  x  30.0 | | 840.0 |
| 2 Items | (Rounded) | 1590 |

## Location Map

| Borrower/Client | GLORIA E SWANSON | | | | |
|---|---|---|---|---|---|
| Property Address | 8920 S Chappel Ave | | | | |
| City | CHICAGO | County COOK | | State IL | Zip Code 60617-2919 |
| Lender | GLORIA SWANSON | | | | |

