UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GLORIA E. SWANSON and CHARLES M. ROUTEN,<br><br>    Plaintiffs,<br><br>    v.<br><br>CITI, d/b/a CITIBANK, a member of CITIGROUP, ANDRE LANIER, and PCI APPRAISAL SERVICES,<br><br>    Defendants. | No. 09 C 2344<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Gloria Swanson ("Swanson") and Charles Routen ("Routen") filed an amended complaint with this Court on June 29, 2009. Defendants Andre Lanier ("Lanier") and PCI Appraisal Services ("PCI") and Defendant Citibank filed separate motions to dismiss Plaintiffs' amended complaint on July 15, 2009. I will address both motions to dismiss in this opinion.

**I. BACKGROUND**

On or about February 4, 2009, Swanson heard an announcement on the television that Citibank was going to "make a concerted effort to get more TARP money" into the hands of consumers. Plaintiffs allege that these public announcements were not sincere, but rather an attempt to downplay bad publicity Citibank was experiencing because of a scandal involving executives' personal use of company jets. Thereafter, Swanson went to Citibank and applied for an equity loan.

When Swanson entered Citibank, she first spoke with Citibank loan representative B. Skertich. Swanson told Skertich that she had previously been denied an equity loan with Washington Mutual (now JPMorgan Chase). Skertich informed Swanson that her husband

(Routen) would need to be present to make the loan application. Swanson did not accept this statement and at which point Skertich asked a manager to speak with Swanson.

Citibank Manager Cimino spoke to Swanson, reiterated that her husband needed to be present for the loan application, and also informed Swanson that Citibank's loan criteria was comparatively more stringent than JPMorgan Chase's. At the end of this conversation, Skertich gave Swanson an application to take home and complete, to be signed by both Swanson and her husband Routen.

Swanson returned the next day with the completed application. Skertich proceeded to input Plaintiffs' required information into the computer and verbally confirmed each answer with Swanson. Plaintiffs allege that when the question of race arose, a discussion between Skertich and Swanson commenced regarding the Skertich's mixed race wife and child.

Plaintiffs later received a letter dated February 5, 2009 stating that they had been conditionally approved for $50,000 pending the review of required documents. On February 7, 2009 Andre Lanier of PCI Appraisal Services went to Plaintiffs' home and performed an appraisal for Citibank. On February 17, 2009 Plaintiffs were informed that the appraisal of their home was $170,000 and that they were being denied a loan because there was not sufficient equity in Plaintiffs' home.[1] A series of letters followed between Citibank and Plaintiffs whereby Plaintiffs challenged the appraisal. Plaintiffs allege that in 2003 their home was appraised for $260,000. Additionally, Plaintiffs noted that other homes on their block recently sold for

---

[1] Plaintiffs owe approximately $119,000 on their first mortgage and $25,000 on an equity line of credit with another bank. Plaintiffs intended to pay off the $25,000 second mortgage out of the $50,000 equity loan they applied for with Citibank.

$325,000 and $260,000 respectively.[2]   Plaintiffs also state that Allstate Insurance Company currently insures their home for $236,817.  On April 12, 2009 Plaintiffs hired Midwest Valuations to conduct an appraisal of their home.  This appraisal valued their home at $240,000.

Plaintiffs allege racial discrimination by Defendants after being denied their loan application.  Plaintiffs allege that Citibank intentionally discriminates against the African American community both by discouraging African Americans from applying for loans, and also by undervaluing appraisals to provide a legitimate reason to deny conditionally approved loans.  Plaintiffs allege that Defendants Lanier and PCI are involved in Citibank's scheme and intentionally undervalued their home's value in their appraisal for Citibank.

Plaintiffs seek damages for fraud under Title VIII of the Civil Rights (the Fair Housing Act), the Equal Opportunity Act, the Civil Rights Act of 1964, the Community Reinvestment Act of 1977 and the Home Mortgage Disclosure Act.  Plaintiffs also seek punitive damages for Defendants' intentional infliction of emotional distress.

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) requires that I analyze the legal sufficiency of the complaint, and not the factual merits of the case.  *Autry v. Northwest Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998).  I must take all facts alleged in Plaintiffs' complaint as true and draw all reasonable inferences from those facts in favor of the Plaintiffs.  *Caldwell v. City of Elwood*, 959 F.2d 670, 671 (7th Cir. 1992).  Plaintiffs, for their part, must do more than solely recite the elements for a violation; they must plead with sufficient particularity so that their right

---

[2] Plaintiffs acknowledge and allege that home values have recently decreased in many areas.

to relief is more than a mere conjecture. *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiffs must plead their facts so that, when accepted as true, they show the plausibility of their claim for relief. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Plaintiffs must do more than plead facts that are "consistent with Defendants' liability" because that only shows the possibility, not the plausibility, of her entitlement to relief. *Id.* (internal quotations omitted).

**III. DISCUSSION**

**A. The Fair Housing Act (amended Title VIII of the Civil Rights Act of 1968) and The Equal Credit Opportunity Act**

Plaintiffs allege that they were denied an equity loan by Citibank because of their race in violation of The Fair Housing Act ("FHA") and the Equal Credit Opportunity Act ("ECOA"). Plaintiffs seek relief from all Defendants under these Acts alleging racial discrimination.[3] FHA prohibits racial discrimination in the making of residential real estate related transactions such as the making or purchasing of loans. 42 U.S.C. § 3605. ECOA prohibits any creditor from discriminating against any applicant on the basis of race or color. 15 U.S.C. § 1691(a)(1). The facts supporting Plaintiffs' allegations under both of these statutes are intertwined, therefore, I will address Plaintiffs' requests for relief under these two acts together.

At the motion to dismiss stage, a court must construe a plaintiff's allegation liberally and a plaintiff is not required to support their facts with evidence. *Ware v. Indymac Bank*, 534 F.Supp.2d 835 (N.D. Ill. 2008); *Frederick v. Select Portfolio Servicing, Inc.,* 2009 WL 230597, *5 (N.D. Ill. Jan. 30, 2009). Under both FHR and ECOA, a plaintiff can show discrimination by

---

[3] Although Plaintiffs do make a passing reference to "disparate impact" in their complaint, Plaintiffs make no allegations that Defendants have a facially-neutral practice or policy and do not seek relief as to this cause of action. For this reason, I will not address disparate impact in this opinion.

alleging: "(1) that she is a member of a protected class; (2) that she applied for and was qualified for a loan; (3) that the loan was rejected despite her qualifications; and (4) that the defendants continued to approve loans for applicants with qualifications similar to those of the plaintiff." *Latimore v. Citibank*, 979 F.Supp. 662, 664-65 (N.D. Ill. 1997); *Latimore v. Citibank*, 151 F.3d 712, 713-16 (7th Cir. 1998). Failing full satisfaction of these four elements, plaintiffs may also allege facts which provide the defendant with notice of a claim for plausible relief. *Matthews v. Homecoming Financial Network*, 2005 WL 2387688, *5 (N.D. Ill. Sept. 26, 2005); *Twombly*, 550 U.S. 544 (2007).

Plaintiffs allege that they faced unlawful racial discrimination in violation of FHA and ECOA in two contexts. First, they allege that Citibank discriminated against them during the loan application process by trying to prevent them from filing a loan application. Second, they allege that Citibank, along with Lanier and PCI, purposefully and falsely lowered the value of Plaintiffs' appraisal so that Citibank would have an apparently "legitimate reason" to deny Plaintiffs' loan.

Plaintiffs allege that statements made by Citibank representatives during their loan application process suggest discrimination. First, Plaintiffs assert that Citibank representative Skertich told Swanson that both she and her husband were required to be present for the application process. Swanson alleges that this was "a first-step ploy" to discourage Swanson from applying for a loan. Second, Plaintiff alleges that comments by Citibank manager Cimino that Citibank's loan criteria were "more stringent" than the JPMorgan Chase criteria were made to discourage Swanson from "even sitting for a loan application." Finally, Plaintiffs allege that a discussion between Citibank representative Skertich and Swanson about the Skertich's mixed

race wife and child was an attempt to "throw Plaintiff off by attempting to allay any suspicions that Swanson may have had about racial discrimination" when "Citibank was getting ready to inflict racial discrimination of Plaintiffs by systematically eliminating them from a loan strictly due to race."

Plaintiffs next allege that Citibank schemed with PCI and Lanier to purposefully devalue their [Plaintiffs] property to avoid approving Plaintiffs' equity loan application. The facts alleged by Plaintiffs to support this claim are (1) that PCI, through Lanier, appraised Plaintiffs' home at the request of Citibank; and (2) there is a disparity between the appraised value of Plaintiffs' home as calculated by Citibank and PCI, and the appraised value of Plaintiffs' home as calculated by Midwest Valuations, $170,00 and $240,000 respectively.

Plaintiffs have failed to meet the four factor test set forth by *Latimore* because they allege no facts to support factor four, "that the defendants continued to approve loans for applicants with qualifications similar to those of the plaintiff." *Latimore*, 151 F.3d at 713-16.

I turn now to the question of whether or not Plaintiffs have successfully pleaded enough facts to put Defendants on notice of their claim and allege a plausible claim for relief. Plaintiffs have successfully pleaded facts with enough specificity to put Defendants on notice as to their claims. Plaintiffs have identified themselves as a member of a protected class, and identified a discriminatory practice whereby Defendants intentionally undervalue home appraisals to avoid distributing loans to African Americans.

Finally, I address whether the facts as pleaded are sufficient to meet the plausibility standard under *Twombly* and *Iqbal*.[4]

I begin with Plaintiffs' allegations that Citibank tried to discourage them from filing a loan application. First, the statement made by Skertich that both applicants should be present for a loan application does not suggest that Swanson was being discriminated against, nor do Plaintiffs allege that these statements were contrary to any official Citibank loan application policy or procedure. Furthermore, Swanson was able to proceed with her application without her husband's presence. Next, I do not find that Cimino was attempting to discourage Swanson for applying for a loan by comparing Citibank's loan criteria with JPMorgan Chase's. Plaintiffs admit that Swanson told Cimino that she had applied for, and been denied, a loan with JPMorgan Chase. Although Plaintiffs allege that the only thing Cimino knew about Swanson during their conversation was that she was a black woman, in fact, Cimino also knew that Swanson had been denied a loan by Citibank competitor, JPMorgan Chase. Following this conversation, Plaintiff was given a loan application and instructed on what was needed to complete the process. Under *Iqbal*, Plaintiffs' allegations that this conversation was part of a larger scheme to discourage her loan application are conclusory and fail to meet the plausibility requirement.

Plaintiffs support the allegation that Citibank and PCI were together engaged in a "systematic scheme" to discriminate against African Americans by stating that Citibank requested PCI to appraise Plaintiffs' home, that PCI undervalued Plaintiffs' home appraisal, and that because of the incorrect appraisal, Citibank was able to deny Plaintiffs their conditional

---

[4] Although Plaintiffs advocate for the use of an alternative pleading standard (*Bishop v. Ellsworth*, 91 Ill. App.2d 386, 391 234 N.E. 49, 52 (3d. Dist. 1968)) I am bound by our most recent Supreme Court precedent.

$50,000 equity loan.[5] The crux of Plaintiffs' allegations lies in the use of the disparity between Citibank and PCI's appraisal of their home ($170,000) and the appraisal of their home by Midwest Valuations ($240,000) as evidence of Defendants' scheme and their discriminatory practices. The Seventh Circuit, however, has held that a disparity between appraisals "does not create an inference of discrimination." *Latimore v. Citibank Fed. Sav. Bank*, 151 F.3d 712, 715 (7th Cir. 1998). As the Seventh Circuit acknowledged in *Latimore*, "[r]eal estate appraisal is not an exact science" and the fact that one appraisal is "lower than someone else's does not create an inference of discrimination." *Id*. Plaintiffs raise the fact that although an "appraisal is not an exact science"[6] $70,000 is a substantial variance. Defendant Citibank highlights, however, that when the Seventh Circuit considered the issue of appraisals, the percentage difference was almost identical to the case at hand.[7] I acknowledge that the sums of money here are greater than those involved in the *Latimore* case, however the relative values of the appraisals are strikingly similar. Although Plaintiffs insinuate that the *Latimore* decision is erroneous, I do not depart from the Seventh Circuit's conclusion that differences in appraisal values "do not create an inference of discrimination." *Latimore*, 151 F.3d at 715.

Accepting that differences in appraisal values cannot create an inference of racial discrimination, I find that Plaintiffs have not pleaded facts sufficient to support a claim for relief

---

[5] Plaintiffs do not plead conspiracy in their Amended Complaint.

[6] I note here that Plaintiffs disagree with the Seventh Circuit's classification of appraisals as inexact.

[7] In *Latimore*, the bank's appraisal ($45,000) was 72.5% of applicant's appraisal ($62,000). 151 F.3d 712, 715. Furthermore, the bank that later provided plaintiff with a loan in *Latimore* appraised her home, months later, at $79,000 ($45,000 was 56.9% of this $79,000 appraisal). Plaintiffs' bank appraisal of $170,000 was 70.8% of Plaintiffs' independent appraisal of $2400.

8

for racial discrimination under FHA or ECOA. I therefore grant Defendants' motions to dismiss Plaintiffs; claims as to FHA and ECOA.[8]

### B. Civil Rights Act of 1964

In paragraph1 of Plaintiffs' amended complaint, Plaintiffs make reference to Title VIII of the Civil Rights Act of 1968 (Fair Housing Act) and refer to this as the "Act" throughout their complaint. In paragraph 34 of Plaintiffs' amended complaint, they note that the "Civil Rights Act of 1964 and its subsequent amendments clarified and extended" the equal protection doctrine. Plaintiffs then proceed to discuss the Fair Housing Act of 1968, Fair Housing and Equal Opportunity provisions. Plaintiffs again refer to the Civil Rights Act of 1964 in their answer to defendants Lanier and PCI's motion to dismiss at paragraph 8 stating that Lanier and PCI violated the Civil Rights Act of 1964 through their collusion with Citibank in devaluing Plaintiffs' property.

Plaintiffs do not refer to any specific title of the Civil Rights Act of 1964 and it is therefore unclear what relief is sought under this Act. Because Plaintiffs failed to state a cause of action under the Civil Rights Act of 1964, I grant Defendants' motions to dismiss Plaintiffs' claims as to this Act.

---

[8] Defendants Lanier and PCI argue that they cannot be held liable under ECOA because they are not creditors. As I have dismissed Plaintiffs' claims as to the ECOA, I do not reach the issue of whether or not appraisers are liable as creditors under this statute.

**C. Fraud**

Although Plaintiffs do not explicitly invoke common law fraud in their complaint, they do allege fraud under various theories, and I conclude that it is appropriate to address this as a cause of action.

The Seventh Circuit has held that a claim for fraud must include the following elements: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) defendant's intent that the statement induce the plaintiff to act; (5) plaintiff's reliance on the statement; and (6) plaintiff's damages resulting from reliance upon the truth of the statement." *Tricontinental Indus v. Pricewaterhouse Coopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007) (internal citations omitted). Allegations of fraud must conform to a heightened pleading standard set forth by Federal Rule of Civil Procedure 9(b) and require that a plaintiff plead all averments of fraud with particularity. Although the heightened pleading standard does not apply to the state of mind requirement a complaint must show a "basis for believing that plaintiffs could prove scienter." *Id*.

The Seventh Circuit finds pleadings that set forth "a general outline of the fraud scheme" adequate to notify the defendants of their alleged role. *Whitley v. Taylor Bean & Whitacker Mortg. Corp.,* 607 F.Supp.2d 885, 897 (N.D.Ill. 2009) (internal citations omitted). "Where matters are within the unique knowledge of defendants, Rule 9(b) does not preclude allegations based on information and belief, provided the complaint includes the specific facts on which the belief is based." *Whitley,* 607 F.Supp.2d at 897.

The allegations of fraud against Defendants Lanier and PCI are that they intentionally appraised Plaintiffs' home at an unjustifiably low rate at the request of Citibank because of Plaintiffs' race. Plaintiffs allege that there is "no justifiable reason for Lanier and PCI. . . to

10

come up with such a low[er] appraisal" other than the fact that they are involved in a scheme with Citibank. In support of this allegation, Plaintiffs point to the discrepancy between PCI's appraisal, and the appraisal of Midwest Valuations. As previously noted, however, "no reasonable suspicion of racial discrimination can arise from the mere fact of a discrepancy between an appraisal conducted" by one bank and the appraisal conducted by a defendant. *Latimore*, 151 F.3d at 715. The Seventh Circuit does not however limit discrepancies in appraisal value as raising suspicion of fraud.

Plaintiffs' allegations of fraud pertaining to Defendant Citibank echo those directed at Lanier and PCI. In addition, Plaintiffs allege that Citibank has implemented a "scheme in order to 'appear' to be giving consumers access to the government bailout money" whereby Citibank "is now engaging in false and misleading advertising regarding getting loans to customers."[9] In support of this allegation, Plaintiffs state that Citibank announced on television that they were "going to make a concerted effort to get more of the TARP money than they had accepted" from the government into "the hands of consumers in the form of equity loans. . ." but that once Plaintiffs arrived at Citibank, they were discouraged from applying for a loan and their application was eventually denied. Plaintiffs note that "if a black applicant is discouraged at the front desk" and does not apply for a loan, Citibank must not report data in its records "regarding denying loans to blacks in its entire market area under HMDA or CRA." Plaintiffs also allege that Citibank uses race as a way of avoiding risk because "[banks] know that loans in the minority community are riskier than those in the White community."[10] Additionally, Plaintiffs

---

[9] Plaintiffs do not ask for relief under a theory of false advertising.

[10] This is a fairly startling assertion of fact coming from a member of that minority community.

allege that Citibank was avoiding "the alleged trickle down of the TARP money to consumers" in an effort to give its employees the "recently announced 50% raises."

I find the Plaintiffs have pleaded sufficient facts to support a claim of fraud and therefore I deny Defendants Citibank, PCI and Lanier's motions to dismiss Plaintiffs; claims as to fraud.

### D. Intentional Infliction of Emotional Distress

The tort of intentional infliction of emotional distress requires that (1) conduct be truly extreme and outrageous; (2) the actor intend that his conduct inflict severe emotional distress or know that there is a high probability that severe emotional distress will result from his actions; and (3) severe emotional distress results from the actor's conduct. *McGrath v. Fahey*, 126 Ill. 2d 78 (Ill. 1988).

Plaintiffs plead no facts to support their allegation of severe emotional distress, and provide no facts describing mental, physical, or emotional infirmity.

I therefore dismiss Plaintiffs' request for punitive damages related to Citibank, Lanier and PCI's alleged intentional infliction of emotional distress.

### E. Community Reinvestment Act of 1977 and Home Mortgage Disclosure Act

The purpose of the Community Reinvestment Act is to "require each appropriate Federal financial supervisory agency to use its authority when examining financial institutions, to encourage such institutions to help meet the credit needs of the local communities in which they are chartered [. . .]." 12 U.S.C.§ 2901. The Home Mortgage Disclosure Act's purpose is "to provide the citizens and public officials of the United States with sufficient information to enable them to determine whether depository institutions are filling their obligations to serve the housing needs of the communities and neighborhoods in which they are located [. . .]." 12 U.S.C. § 2801(b).

Neither the Community Reinvestment Act nor the Home Mortgage Disclosure Act create a private cause of action. *Hicks v. Resolution Trust Co*, 970 F.2d 378, 382 (7th Cir. 1992); 12 U.S.C.§ 2901; 12 U.S.C. § 2801(b). I therefore dismiss Plaintiffs' claims for relief as to the Community Reinvestment Act and the Home Mortgage Disclosure Act.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss Plaintiffs' amended complaint are granted in part, and denied in part.

ENTER:

James B. Zagel
United States District Judge

DATE: October 16, 2009