**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| GLORIA E. SWANSON and CHARLES M. ROUTEN, | |
| Plaintiffs, | No. 09 C 2344 |
| v. | Judge James B. Zagel |
| CITI, d/b/a CITIBANK, a member of CITIGROUP, ANDRE LANIER, and PCI APPRAISAL SERVICES, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Gloria Swanson ("Swanson") and Charles Routen ("Routen") filed their Amended Complaint on June 9, 2009 alleging racial discrimination after being denied a loan application and asserting claims against Defendants Citibank, Andre Lanier ("Lanier"), and PCI Appraisal Services ("PCI") under the Fair Housing Act ("FHA"), 42 U.S.C § 3605(a), and the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691(a)(1) . Defendants filed motions to dismiss and on October 16, 2009 I allowed Plaintiffs to proceed against Defendants under a theory of common law fraud theory. Although this theory of liability was not invoked by Plaintiffs, I construed this claim from their complaint. I then granted Defendants leave to file a motions to dismiss regarding the common law fraud claim. Defendants now come with motions to dismiss Plaintiffs' common law fraud claims pursuant to Federal Rule of Civil Procedure 12(b)(6). I address each of these motions in this Order.

1

**I. BACKGROUND**

On or about February 4, 2009, Swanson heard an announcement on NBC5 news television that Citibank was going to "make a concerted effort to get more TARP money" into the hands of consumers. Plaintiffs allege that this public announcement was not sincere, but rather an attempt to downplay bad publicity Citibank was experiencing because of a scandal involving executives' personal use of company jets. Additionally, Plaintiffs allege that the announcement that Citibank planned on distributing TARP money was insincere because Citibank had "no intention of granting many loans in the African American community." Thereafter, Swanson went to Citibank and applied for an equity loan.

When Swanson entered Citibank, she first spoke with Citibank loan representative B. Skertich. Swanson told Skertich that she had previously been denied an equity loan with Washington Mutual (now JPMorgan Chase). Skertich informed Swanson that her husband (Routen) would need to be present to make the loan application. Swanson did not accept this statement and at which point Skertich asked a manager to speak with Swanson.

Citibank Manager Cimino spoke to Swanson, reiterated that her husband needed to be present for the loan application, and also informed Swanson that Citibank's loan criteria was comparatively more stringent than JPMorgan Chase's. At the end of this conversation, Skertich gave Swanson an application to take home and complete, to be signed by both Swanson and her husband Routen.

Swanson returned the next day with the completed application. Skertich proceeded to input Plaintiffs' required information into the computer and verbally confirmed each answer with Swanson. Plaintiffs allege that when the question of race arose, a discussion between Skertich and Swanson commenced regarding the Skertich's mixed race wife and child.

Plaintiffs later received a letter dated February 5, 2009 stating that they had been conditionally approved for $50,000 pending the review of required documents. On February 7, 2009 Andre Lanier of PCI Appraisal Services went to Plaintiffs' home and performed an appraisal for Citibank. On February 17, 2009 Plaintiffs were informed that the appraisal of their home was $170,000 and that they were being denied a loan because there was not sufficient equity in Plaintiffs' home.[1] A series of letters followed between Citibank and Plaintiffs whereby Plaintiffs challenged the appraisal. Plaintiffs allege that in 2003 their home was appraised for $260,000. Additionally, Plaintiffs noted that other homes on their block recently sold for $325,000 and $260,000 respectively.[2] Plaintiffs also state that Allstate Insurance Company currently insures their home for $236,817. On April 12, 2009 Plaintiffs hired Midwest Valuations to conduct an appraisal of their home. This appraisal valued their home at $240,000.

Plaintiffs allege racial discrimination by Defendants after being denied their loan application. Plaintiffs allege that Citibank intentionally discriminates against the African American community both by discouraging African Americans from applying for loans, and also

---

[1] Plaintiffs owe approximately $119,000 on their first mortgage and $25,000 on an equity line of credit with another bank. Plaintiffs intended to pay off the $25,000 second mortgage out of the $50,000 equity loan they applied for with Citibank.

[2] Plaintiffs acknowledge and allege that home values have recently decreased in many areas.

by undervaluing appraisals to provide a legitimate reason to deny conditionally approved loans. Plaintiffs allege that Defendants Lanier and PCI are involved in Citibank's scheme and intentionally undervalued their home's value in their appraisal for Citibank.

## II. STANDARD OF REVIEW

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. In ruling on such a motion, I accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences from those facts in the plaintiff's favor. *Dixon v. Page*, 291 F.3d 485, 486 (7th Cir. 2002). To state a claim, the complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That said, the complaint must describe the claim in sufficient detail to give the defendant "fair notice of what . . . the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation and citation omitted). The "allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *EEOC v. Concentra Health Serv., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

## III. DISCUSSION

A claim for fraud must include the following elements: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reasonable reliance on the statement; and (5) plaintiff's damages resulting from reliance upon the truth of the statement. *Tricontinental Indus. v. Pricewaterhouse Coopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007) (internal citations omitted);

*Chicago Export Packing Co. v. Teledyne Industries, Inc.*, 566 N.E.2d 326, 329 (Ill.App.Ct.1990). Allegations of fraud must conform to a heightened pleading standard set forth by Federal Rule of Civil Procedure 9(b) and require that a plaintiff plead all averments of fraud with particularity. Although the heightened pleading standard does not apply to the state of mind requirement a complaint must show a "basis for believing that plaintiffs could prove scienter." *Id*.

The Seventh Circuit finds pleadings that set forth "a general outline of the fraud scheme" adequate to notify the defendants of their alleged role. *Whitley v. Taylor Bean & Whitacker Mortg. Corp.,* 607 F.Supp.2d 885, 897 (N.D.Ill. 2009) (internal citations omitted). "Where matters are within the unique knowledge of defendants, Rule 9(b) does not preclude allegations based on information and belief, provided the complaint includes the specific facts on which the belief is based." *Whitley,* 607 F.Supp.2d at 897.

A. Allegations of Fraud Against Citibank

At the center of Plaintiffs' claim of fraud is the allegation that Citibank made statements that deceived Plaintiffs by making it appear that bailout money was available for loans to customers, when in fact, Citibank never intended to make a loan available to Plaintiffs because of their race. Plaintiffs allege that Citibank implemented a "scheme in order to 'appear' to be giving consumers access to the government bailout money" whereby Citibank engaged "in false and misleading advertising regarding getting loans to customers."[3] Plaintiffs also state that Citibank made false statements, beginning with the NBC5 announcement, that induced Plaintiffs to go to Citibank and apply for a loan. After relying on this announcement, Plaintiffs went to

---

[3] I note that Plaintiffs do not assert that Citibank made fraudulent statements in a commercial, but rather that they heard an announcement on NBC5 news television that Citibank was going to "make a concerted effort to get more TARP money" into the hands of consumers.

Citibank where they were discouraged from applying for a loan. Once the loan application was completed, Plaintiffs assert that Citibank intentionally relied on appraisals that they knew to be false in order to undervalue their property and disqualify Plaintiffs from receiving a loan. Finally, Plaintiffs incurred damages as a result of their reliance on Citibank's statements in that they were deprived of the Citibank loan.

Plaintiffs assert reliance on two allegedly fraudulent statements by Citibank, first the news announcement, and second the allegedly fraudulent appraisal that Citibank relied on in denying Plaintiffs' loan application. Under Illinois law, a false promise for future conduct is not actionable unless the false representation of future conduct is "alleged to be the scheme employed to accomplish the fraud." *Commonwealth Eastern Mortg. Co. v. Williams*, 516 N.E.2d 515, 521 (Ill.App. Ct.1987); *Speakers of Sport, Inc. v. Proserv, Inc.*, 178 F.3d 862, 866 (7th Cir. 1999); *See Chatham Surgicore, Ltd. v. Health Care Service Corp.*, 826 N.E.2d 970, 978 (Ill.App.Ct. 2005). To fall within this exception, the plaintiff must allege sufficient facts from which a scheme can be inferred. *Williams*, 516 N.E.2d at 522. Courts have recognized that "too indefinite statements" cannot support a claim of fraud and will not support allegations of a scheme. *Id*. In *Williams*, Jersey Mortgage Company's agent allegedly told the plaintiff that "there should be no problem getting additional funding, securing the business with the second mortgage in order to do the work." *Id*. at 516. In a deposition, it was determined that despite the fact that Jersey Mortgage indicated that it would provide the plaintiff with a loan, no specific details regarding the loan were discussed, including interest rate or the exact activities for which the loan would be extended. *Id*. Likewise in this case, the statement Plaintiff heard on the news was too indefinite to infer the existence of a scheme.

Furthermore, when examining a party's reliance on statements, courts have held that the party's reliance must be reasonable. *Chicago Export Packing Co. v. Teledyne Industries, Inc.*, 566 N.E.2d 326, 329 (Ill.App.Ct. 1990). A court must look at all circumstances when determining whether the injured party reasonably relied on a false statement. *Id*. Here, I find that it was unreasonable for Plaintiffs to rely on a statement in a news announcement that Citibank was going to "make a concerted effort to get more TARP money" into the hands of consumers as a guarantee of a loan. Although the announcement indicated that Citibank was going to make a "concerted effort" to distribute bailout funds, this was never a specific promise to any individual person that they would be approved for a loan. Perhaps the only thing Plaintiffs could reasonably rely on from the news announcement was that they would be treated fairly. Plaintiffs allege that they were treated unfairly by being subjected to racial discrimination. Plaintiffs reference specific statements made by Citibank employees that Plaintiffs allege were intended to discourage Plaintiffs from applying for a loan. These statements, however, did not induce Plaintiffs to act in reliance as illustrated by the fact that Plaintiffs successfully filed a loan application. Therefore this theory of liability must fail.

Plaintiff's assertion that Citibank's reliance on Lanier's appraisal constitutes fraud likewise fails. Although Plaintiffs state that Citibank relied on Lanier's appraisal in denying Plaintiffs' loan, Plaintiffs do not assert facts indicating what, if any, actions they themselves were induced to take as a result of Citibank's denial of their loan. Furthermore, Citibank must have had intended for its statements to Plaintiffs to induce them to act. No such facts are alleged. Without such assertions this claim must fail.

B. Allegations of Fraud Against Lanier and PCI

Plaintiffs allege that Lanier, on behalf of PCI, produced a fraudulent and false appraisal of their home to disqualify Plaintiffs from receiving a Citibank loan because of their race. Specifically, Plaintiffs contend that Lanier and PCI's appraisal was a false statement of material fact, that Lanier and PCI knew that the appraisal was false, that Plaintiffs relied upon the truthfulness of the appraisal and that Plaintiffs suffered damages as a result of Defendants' false appraisal. Plaintiffs admit that Lanier and PCI's appraisal did not induce them to act in any way other than to contest the appraisal, but assert that the false appraisal induced Citibank to deny Plaintiffs' loan.

Plaintiffs' fraud claim must fail. As Plaintiffs admit in their Response, Lanier's allegedly false appraisal was not made to induce *Plaintiffs* to act, nor were Plaintiffs induced to act as a result of the appraisal. Furthermore, as Defendants argue, Plaintiffs make clear in their complaint that in fact they never accepted or relied on the appraisal that Lanier provided. As Plaintiffs' Amended Complaint fails to satisfy necessary elements of common law fraud, this claim must fail.

C. Plaintiffs Ask That I Reconsider Allegations of Civil Conspiracy

Plaintiffs assert that they successfully alleged conspiracy in their complaint and ask that I reconsider my prior finding that Plaintiffs did not allege conspiracy in their complaint. I grant Plaintiffs' request and now address Plaintiffs' claim of conspiracy.

To state a successful claim for civil conspiracy, a plaintiff must allege both: (1) an agreement, and (2) a tortious act committed in furtherance of that agreement. *Lozman v. Putnam*, 884 N.E.2d 756, 773 (Ill.App.Ct. 2008). Here, Plaintiffs allege that Defendants Citibank, Lanier

and PCI were involved in a conspiracy to deny Plaintiffs' loan application on the basis of their race. Plaintiffs allege that Citibank attempted to discourage their loan application, and that after the application was filed, Citibank agreed with Lanier and PCI to undervalue Plaintiffs' home to provide a basis for denying a loan. Plaintiffs highlight the difference in appraisal values between Lanier and PCI's appraisal ($170,000), and the appraisal of their home by Midwest Valuations ($240,000) as evidence of Defendants' scheme and their discriminatory practices.

Here, although Plaintiffs clearly allege an agreement between the Defendants, they are unable to satisfy the second required element of a conspiracy claim. The tortious act Plaintiffs point to is the allegedly intentional and discriminatory undervaluation of their home on the basis of their race. As I noted in my prior Order, a disparity between appraisals "does not create an inference of discrimination." *Latimore v. Citibank Fed. Sav. Bank*, 151 F.3d 712, 715 (7th Cir. 1998). Accordingly, Plaintiffs have not successfully alleged that a tortious act was committed in furtherance of the alleged agreement between Defendants. For this reason Plaintiffs' conspiracy allegations must fail.

**IV. CONCLUSION**

For the foregoing reasons I grant Defendants motions to dismiss Plaintiffs' Amended Complaint.

ENTER:

James B. Zagel
United States District Judge

DATE: December 22, 2009

9